HARRY O. KILBANE, Plaintiff-Appellant, *v.* MILDRED DYAS, Defendant-Appellee.

(No. 74-333; ▮▮▮▮▮▮▮)

Second District (1st Division)—November 6, 1975.

Kenneth Welker and Hercules Paul Zagoras, both of Waukegan, for appellant.

John H. Krackenberger, of Snyder, Clarke, Dalziel, Holmquist & Johnson, of Waukegan, for appellee.

Mr. JUSTICE HALLETT delivered the opinion of the court:

The plaintiff sought by a sworn complaint in Small Claims Court to recover $1000 for "services rendered in negotiation of a lease of a store building in Waukegan, Illinois." Upon motion of the defendant, summary judgment was entered in favor of the defendant and against the plaintiff because the plaintiff had admitted in his sworn answers to interrogatories that he was not and had not been registered either as a real estate broker or as a real estate salesman. The plaintiff appeals, contending that a question of fact exists as to whether he was merely a "finder" rather than a broker and accordingly was entitled to a fee although he was not registered. We disagree and affirm.

According to the plaintiff's verified complaint and his sworn answers to the interrogatories, sometime in the summer of 1971 the defendant,

Mrs. Mildred Dyas called the plaintiff from her home in Virginia and asked him to look for a tenant for her store building in Waukegan, Illinois. There was no discussion at any time as to the basis of any fees to be paid the plaintiff. The plaintiff was not a registered real estate broker or salesman at the time the oral agreement was entered into. Nor is he now.

On May 14, 1974, the plaintiff filed this action in the Small Claims Court of Lake County alleging under oath that the defendant was indebted to him in the sum of $1000 for "services rendered in negotiation of a lease of a store building in Waukegan, Illinois." Summary judgment for defendant and against plaintiff was entered on July 12, 1974, because of the plaintiff's admissions in his sworn answers to the interrogatories that he had not been registered required by chapter 114½ of the Illinois Revised Statutes. The plaintiff's motion for reconsideration was denied on July 26, 1974. On August 7, 1974, the plaintiff filed a motion for the court to reinstate the case and for leave to file an amended complaint which sought recovery for "service in procuring a willing lessee under an oral contract." This motion was properly denied on August 21, 1974, because the plaintiff had previously (on August 8, 1974) appealed from the summary judgment and the trial court had therefore lost jurisdiction to permit such a filing.

The plaintiff here contends that a question of fact exists as to whether he merely found a lessee or whether he participated in the negotiations for the lease. He further contends that if in fact he merely acted as a "finder," he may recover a "finders fee" although he was never registered as a real estate broker or salesman.

This court recognizes, as did the Illinois courts in *Modern Tackle Co. v. Bradley Industries, Inc.* (1973), 11 Ill.App.3d 502, 297 N.E.2d 688, and *People v. Baldi* (1972), 3 Ill.App.3d 496, 279 N.E.2d 21, that some, but not all, courts have recognized a distinction between finders and real estate brokers, defining a finder as an intermediary who contracts to find and bring the parties together but leaves the negotiation of the ultimate transaction to the principals. (*Bittner v. American-Marietta Co.* (E.D. Ill. 1958), 162 F.Supp. 486; *Tyrone v. Kelley* (1973), 9 Cal.3d 1, 507 P.2d 65, 106 Cal. Rptr. 761; *Zappas v. King Williams Press, Inc.* (1970), 10 Cal.App.3d 768, 89 Cal. Rptr. 307; *Rogers v. Ellsworth* (Tex. Civ.App. 1973), 501 S.W.2d 756, but see *Thywissen v. FTI Corp.* (Tex. Civ.App. 1975), 518 S.W.2d 947; Annot., 24 A.L.R.3d 1160 (1969).) In *People v. Baldi* (1972), 3 Ill.App.3d 496, 279 N.E.2d 21, the court held that the informing of potential purchasers of current listings, the conducting of viewings of listed property and the arranging for preliminary

options by an unregistered salesman were not violations of the Ill. Rev. Stat. 1969, ch. 114½, par. 1. While the result in that case may have been justifiable in that it involved a criminal prosecution and it is not clear that the salesman in question expected himself to collect a commission, this court is not prepared to agree that such conduct would not in fact fall within the statute. Likewise we are not prepared to say that a party may circumvent the requirements of the Act merely by showing that his services were to be limited to the procurement of an interested party to the real estate transaction.

Rather, we agree with the court in *Alford v. Raschiatore* (1949), 163 Pa.Super. 635, 639, 63 A.2d 366, 368, that:

> "* * * 'the common knowledge on the subject', of which the Court must take judicial notice, is that in probably the bulk of real estate transactions conducted by real estate agents or brokers, the agent's part amounts to little more than finding and introducing to a party who is ready and willing to sell, a prospect who is ready, willing and able to buy.
>
> We cannot give to the word 'negotiate' in the sense intended by the Legislature, the strict construction contended for by [appellant]. If we should so do, it would exclude from the regulatory purpose of the Act a great percentage of brokers and salesmen who normally do no more than acquaint prospective buyers and sellers with the location and price of available property, and who annually comply with the licensing feature of the Act in the belief that they are covered by it."

And, as the New York Supreme Court remarked in *Baird v. Krancer* (1930), 138 Misc. 360, 246 N.Y.S. 85, 88:

> "If real estate is going to be the principal element involved in the transaction, a broker has to have a license and cannot evade its necessity by referring to the services as originating or introducing or any other fantastic term. A statute enacted for the protection of the public must be interpreted fairly to effect the purposes of its enactment. It is not to be rendered ineffectual by a strained construction.
>
> The essential feature of a broker's employment is to bring the parties together in an amicable frame of mind, with an attitude toward each other and toward the transaction in hand which permits their working out the terms of their agreement. They may reach that agreement without his aid or interference. Indeed, in a transaction of any magnitude, the terms would never be settled beforehand or negotiated finally by the broker. Each party would

always wait until in direct contact with the other side in order that he might drive the best bargain possible. The broker would have no opportunity to induce one party or the other to agree upon some or all of the terms, and would not be expected to do so. He would be entitled to his commission of the parties agreed upon terms originally proposed by one or the other, or agreed between themselves after the introduction.

This does not mean that the broker has not negotiated the transaction. He does that when he builds up in the minds of the parties a desire to do the business. He never cares what the terms are, so long as the agreement occurs. If the statute does not apply to such a situation, then it is a toothless enactment. Every unlicensed broker will make the same argument that the plaintiff here has made, that he did not have to bring the parties to actual agreement upon all the details, that that phase was something for the parties themselves to determine. In short, every unlicensed broker will be enabled to carry on his business just as he did before the statute came into existence, simply by calling himself a finder, an originator, an introducer, instead of a broker. This would be an absurd limitation of the statute and one unfounded in reason or policy. A broker 'negotiates' just as much when he brings parties together in such frame of mind that they can by themselves evolve a plan of procedure, as when he himself carries on the discussion and personally induces an agreement to accept a specific provision."

Accord, *Sorice v. DuBois* (1965), 25 App.Div.2d 521, 267 N.Y.S.2d 227; *Corson v. Keane* (1950), 4 N.J. 221, 72 A.2d 314; also, *Grammer v. Skagit Valley Lumber Co.* (1931), 162 Wash. 677, 299 P. 376.

■■ Nevertheless, even were we to accept, for the purpose of argument, the distinction between finder and broker, the plaintiff here still cannot recover. The decisions accepting this distinction have uniformly drawn the line between brokers and finders on the basis of whether the person in question has engaged in any negotiating to consummate the transaction. (*Shaffer v. Beinhorn* (1923), 190 Cal. 569, 213 P. 960; *Zappas v. King Williams Press, Inc.* (1970), 10 Cal.App.3d 768, 89 Cal. Rptr. 307; *Rogers v. Ellsworth* (Tex. Civ. App. 1973), 501 S.W.2d 756.) The plaintiff in this case sought recovery for "services rendered in negotiation of a lease." This admission in his verified complaint is binding on him. (*Beccue v. Rockford Park Dist.* (1968), 94 Ill.App.2d 179, 236 N.E.2d 105; *Hastings v. Abernathy Taxi Association, Inc.* (1973), 16 Ill.App.3d 671, 306 N.E.2d 498; *Messenger v. Rutherford* (1970), 130 Ill.App.2d

407, 264 N.E.2d 775.) Plaintiff contends that the words "services rendered in negotiation of a lease" do not necessarily mean he performed the actual negotiating of the lease. But while the pleadings must be liberally construed to do justice between the parties, the rule still is that the pleading must be construed most strongly against the pleader. (*Fowley v. Braden* (1954), 4 Ill.2d 355, 122 N.E.2d 559; *Shlensky v. Wrigley* (1968), 95 Ill.App.2d 173, 237 N.E.2d 776; 30 Ill. L. & Pr. *Pleading* § 19 (1957).) And this principle has its play primarily as to resolving ambiguous or inconsistent allegations against the pleader. (*Church v. Adler* (1953), 350 Ill.App. 471, 113 N.E.2d 327.) Accordingly, we conclude that the plaintiff is bound by his admission that he performed services in negotiating a lease and therefore was not acting as a finder.

For the foregoing reasons, the summary judgment in favor of the defendant and against the plaintiff is affirmed.

Affirmed.

SEIDENFELD, P. J., and GUILD, J., concur.