FRANK KILBANE, Plaintiff-Appellant, v. JAMES COLLINS, Defendant-Appellee.

Second District    No. 76-373

Opinion filed January 19, 1978.

Barry B. Kreisler, of Hollobow & Taslitz, of Chicago, for appellant.

Peter J. Collins, of Collins, Stepanich & Collins, of Waukegan, for appellant.

Mr. JUSTICE BOYLE delivered the opinion of the court:

Frank Kilbane, hereinafter plaintiff, appeals from the trial court's dismissal of count II of his complaint against James Collins, hereinafter defendant, for failure to allege compliance with the statute pertaining to the licensing of real estate brokers (Ill. Rev. Stat. 1965, ch. 114½, pars. 1, 2, 2b).

On appeal, plaintiff's main contention is that his participation in this real estate transaction was not an activity limited by statute (Ill. Rev. Stat.

1965, ch. 114½, pars. 1, 2, 2b) to licensed real estate brokers or salesmen and, thus, entitles plaintiff to a fee for his services. We find this contention to be entirely without merit and we affirm the judgment of the circuit court of Lake County.

Prior to a discussion of this issue, however, it is necessary to set out in detail the pleadings of the parties and the nature of the trial court's orders so that this court may establish a basis for reaching the merits of the controversy.

Plaintiff filed a two-count verified complaint against the defendant on June 24, 1971, in the circuit court of Lake County. Count I alleged under oath the existence of a verbal partnership agreement entered into by plaintiff and defendant on July 25, 1961, whereby the defendant was to provide the purchasing capital and the plaintiff was to negotiate the purchase and sale of certain property. Count I also asserted that the plaintiff had negotiated with the ultimate purchasers from 1967 to 1970 and requested an accounting, a money judgment against the defendant, and a dissolution of the partnership and a distribution of its assets. Count II realleged under oath all the allegations of count I and additionally alleged that the plaintiff was a man of great knowledge and skill in the real estate business and had expended great amounts of time and money over a period of 10 years to effectuate the sale of the partnership assets. Count II requested that the plaintiff be awarded damages pursuant to a contract or, in the alternative, a quantum meruit amount of damages.

On February 5, 1973, the defendant filed his answer, which denied the allegations contained in plaintiff's complaint and further alleged that plaintiff offered the property for sale in his capacity as a real estate broker. On March 16, 1976, the defendant was given leave to file a motion for summary judgment as to count I and a motion to dismiss as count II.

Defendant's motion for summary judgment as to count I, which he was given leave to file on March 16, 1976, asserted that plaintiff had admitted in a sworn deposition that there had never been a partnership agreement relating to the subject real estate. Defendant's motion to dismiss as to count II, which he was also given leave to file on March 16, 1976, maintained that the plaintiff was claiming a commission and that the plaintiff had not alleged anywhere in his pleadings that at any time relevant to this transaction was he a licensed real estate broker or salesman in the State of Illinois and thus entitled to compensation for services rendered in the sale of real estate. Also, on March 16, 1976, the defendant's motion for summary judgment as to count I was allowed, and the plaintiff was "granted leave to file Count II of his complaint instanter * * *." Plaintiff was further given leave to file his answer to defendant's motion to dismiss as to count II within 14 days of March 16, 1976. Plaintiff's original count II, however, was never ruled upon by the trial

court at any time either before or after the plaintiff was granted leave to file his "new" count II.

Thereafter, plaintiff filed a new, unverified count II which alleged that on April 22, 1965, plaintiff and defendant "entered into a verbal agreement whereby the Defendant was to pay to the Plaintiff a fee in the event that the Plaintiff was able to introduce the Defendant to eventual purchasers of" certain described property. Plaintiff further alleged that he was owed a fee of $45,000, five percent of the sales price of $900,000, for the sale of defendant's property in 1970 to purchasers whom plaintiff had introduced to the defendant on or about May 1, 1965.

On April 1, 1976, plaintiff filed an answer to defendant's motion to dismiss count II. Plaintiff's answer denied he claimed a commission as a real estate broker or salesman but asserted that he was to be paid a fee for the introduction of the defendant to the eventual purchasers of the property. Plaintiff also denied that the oral contract fell within the statute of frauds for the reason, among others, that it was capable of performance within one year. The trial court dismissed plaintiff's "new" count II, and plaintiff appeals from the entry of this order.

■■■ First, we note, as the defendant points out, that plaintiff's "old" count II was never properly acted upon by the trial court at any time prior to the trial court's granting plaintiff leave to file a "new" count II. This failure of the trial court to properly dispose of the plaintiff's "old" count II does not prevent this court from reaching the merits of plaintiff's "new" count II on appeal. We interpret the trial court's actions in granting plaintiff leave to file a "new" count II to constitute, in effect, a dismissal of plaintiff's "old" count II and an amendment of his complaint as to the "new" count II. Our liberal construction of the trial court's actions gives due deference to the sound discretion of the trial court in permitting plaintiff to file a "new" count II. Its discretionary decision in allowing plaintiff to accomplish, in effect, an amendment of his complaint clearly did not unduly prejudice the defendant in this cause because the defendant was permitted to present in toto his theory of the case via his pleadings. (*People ex rel. Hamer v. Jones* (1968), 39 Ill. 2d 360, 235 N.E.2d 589; *Blazina v. Blazina* (1976), 42 Ill. App. 3d 159, 356 N.E.2d 164; *Hamer v. Mahin* (1973), 13 Ill. App. 3d 51, 299 N.E.2d 595.) Therefore we hold the trial court properly permitted plaintiff to amend his pleadings by filing a "new" count II and determined this controversy on its merits instead of upon a procedural technicality in the furtherance of justice. *LaMonte v. City of Belleville* (1976), 41 Ill. App. 3d 697, 355 N.E.2d 70.

■■■ The defendant further argues that plaintiff should be bound by his prior verified pleadings contained in count I and the "old" count II and that the trial court could properly look behind the "new" count II and see "the obvious subterfuge of the new pleading and properly dismiss the

case." Defendant cites no authority in support of his position, but the law on this procedural and evidentiary point is well settled. This court recently stated in *Yarc v. American Hospital Supply Corp.* (1974), 17 Ill. App. 3d 667, 670-71, 307 N.E.2d 749, 752:

> "Where the original pleading is *verified* it remains part of the record upon the filing of an amended pleading. [Citations.] Furthermore, the admissions of a party contained in an original verified pleading are judicial admissions and still bind the pleader even after the filing of an amended pleading which supersedes the original. [Citation.] If, however, the amended pleading discloses that the admissions contained in the prior verified pleading were made through mistake or inadvertence, such admissions are only evidential. [Citations.] * * *."

In applying this principle to our facts, it is apparent that neither plaintiff's "new" unverified count II nor his answer specifically stated that the admissions contained in the original verified complaint were made by mistake or inadvertence. Instead, plaintiff merely forsook these affirmations made under oath in his "old" counts I and II without any explanation in his subsequent unverified pleadings. Accordingly, plaintiff was bound by his verified judicial admissions in his original complaint that he had entered into *negotiations* with the ultimate purchasers and had expended great amounts of time and money over ten years to *effectuate* the sale of the property. Thus, the trial court could consider these judicial admissions in determining whether plaintiff's participation alleged in his "new" count II were activities limited by statute to licensed real estate brokers or salesmen. (Emphasis supplied.)

■■ We will now examine the substantive issue presented—whether plaintiff's activities were limited by statute to licensed real estate brokers or salesmen and thus prohibited plaintiff from collecting a fee for his services. In reaching our decision, we note again that the plaintiff is bound by his verified admission that he conducted negotiations over a three-year period with the ultimate purchasers. The Real Estate Brokers and Salesmen Act in effect at the time of the actions alleged in plaintiff's complaint categorically defines a real estate broker under the Act as "any person, * * * who for a compensation * * * *negotiates* the purchase or sale or exchange of real estate * * *." (Emphasis added.) (Ill. Rev. Stat. 1965, ch. 114½, par. 2.) Thus, plaintiff's verified admission in his prior pleadings that he entered into negotiations clearly brings his activities within the scope of a real estate broker or salesman under this Act. Accordingly, plaintiff is prohibited from receiving compensation for his services which are "prohibited under the provisions of this Act to other than registered real estate brokers or real estate salesmen * * *." (Ill. Rev. Stat. 1965, ch. 114½, par. 2b.) Similarly, in *Kilbane v. Dyas* (1975), 33

Ill. App. 3d 439, 337 N.E.2d 217, this court denied recovery to a plaintiff who sought recovery under a *finder* theory, analogous to the introducer theory promoted in the instant case. In *Kilbane* this court held that even if finders were not required by statute to register, the plaintiff was bound by the admission in his prior verified pleading that he had performed services in the negotiation of a lease and therefore was not acting solely as a finder. Thus, it is inconsequential that the plaintiff also claims his actions were limited only to the introduction of the parties, since it is obvious from the verified prior pleadings that his activities were much greater in scope than that and did, in fact, consist of negotiations. As a result, plaintiff may not recover for his services which were limited by statute to licensed real estate brokers or salesmen.

Nonetheless, even if for the sake of argument we did not consider plaintiff's admissions in his prior pleadings and accepted plaintiff's contentions that he was due a commission for his services as an introducer of the eventual purchaser of the property to the seller, plaintiff still cannot recover. In *Kilbane* this court, after a review of a multiplicity of authorities in Illinois and other States, specifically held that an unlicensed real estate broker or salesman could not "circumvent the requirements of the Act merely by showing that his services were to be limited to the procurement of an interested party to the real estate transaction" (*Kilbane*, 33 Ill. App. 3d 439, 441, 337 N.E.2d 217, 219) whether he call himself a finder, an originator, or, as here, an introducer instead of a real estate broker or salesman. We further believe that our views expressed in *Kilbane* need no further reiteration or expression at this time, especially since it is undisputed that plaintiff herein has neither possessed a real estate broker's license or a real estate salesman's license nor has been exempted by statute from such a requirement at any pertinent time. Accordingly, we reject plaintiff's suggestion that our holding in *Kilbane* be limited or distinguished or that we adopt the approach of the various States mentioned in his brief.

Plaintiff also argues that his actions as an introducer, because they admittedly required no specialized skill and were not specifically prohibited by the statute in effect at the time (Ill. Rev. Stat. 1965, ch. 114½, pars. 1, 2, 2b), were not within the scope of activities the legislature intended to regulate.

It would unduly prolong this opinion to set out in total these statutes here. However, the proper scenario for the interpretation of a legislative statute and the intent of the legislature was recently stated by this court in *People v. Bournes* (1977), 55 Ill. App. 3d 237, 240, 370 N.E.2d 1230, 1232, wherein the court stated:

> "In ascertaining the legislature's intention, the entire statute must be considered, as well as the evil to be remedied and the object to

be attained. (*People v. Bratcher* (1976), 63 Ill. 2d 534, 349 N.E.2d 31.) The consequences resulting from various constructions of an act must also be taken into consideration. (*People ex rel. Holland v. Edelman* (1975), 27 Ill. App. 3d 793, 327 N.E.2d 338.) It is to be presumed that the legislature in passing legislation did not intend absurdity, inconvenience or injustice. (*Illinois Crime Investigating Commission v. Buccieri* (1967), 36 Ill. 2d 556, 224 N.E.2d 236, *cert. denied*, 389 U.S. 848, 19 L. Ed. 2d 117, 88 S. Ct. 75.) Therefore, where several constructions may be placed upon a statute, the court should select that which leads to a logical result and avoid those which would be absurd. (*Board of Education v. Community High School District No. 211* (1967), 89 Ill. App. 2d 481, 232 N.E.2d 316.)"

In the instant case, plaintiff's construction of this act would lead to individuals' holding themselves out as so-called introducers, finders, originators, or whatever their new title might be, when in actuality they are performing services or acts prohibited under this act to persons other than registered real estate brokers or real estate salesmen with limited exceptions. (Ill. Rev. Stat. 1965, ch. 114½, pars. 1, 2, 2b.) Plaintiff's approach would result in the absurd—a separate classification of persons, unregulated by statute, whose sole function would be to introduce a buyer to a seller. Such a result is untenable to this court and flies in the face of the purpose and intent of this act which was first enacted in 1921 to regulate real estate brokers and real estate salesmen. Support for our interpretation of the legislature's intent under this 1965 statute is found in *Central National Bank v. Alexander Marketing, Inc.* (1977), 47 Ill. App. 3d 58, 361 N.E.2d 766. In *Central National Bank*, the First District, in interpreting the new Real Estate Brokers and Salesmen License Act (Ill. Rev. Stat. 1973, ch. 114½, pars. 106-07), which repealed the 1921 act involved in our case, stated that:

"The Illinois Real Estate Brokers and Salesmen Act attempts to protect the public by evaluating the competence of persons or legal entities in the real estate business through an examination and licensing system. It enforces this system, in part, by prohibiting unlicensed persons acting as brokers and salesmen from collecting compensation for any services they may render. If anyone dealing in real estate transactions was legally entitled to be paid for such services regardless of whether he was properly licensed and registered, the regulation of real estate brokers and salesmen would become meaningless." 47 Ill. App. 3d 58, 59-60, 361 N.E.2d 766, 768.

■■ Therefore, we hold the intent of the legislature in passing this legislation in 1965 to regulate real estate brokers and real estate salesmen

(Ill. Rev. Stat. 1965, ch. 114½, pars. 1, 2, 2b) was to prohibit individuals, such as plaintiff, from being compensated for activities which are limited by statute to licensed real estate brokers or salesmen. Consequently, plaintiff is not entitled to compensation for his services in introducing the defendant seller to the eventual purchasers of the subject property.

The judgment of the circuit court of Lake County is affirmed.

Judgment affirmed.

GUILD and RECHENMACHER, JJ., concur.