SUNNY RIDGE REALTY AND INSURANCE, INC., Plaintiff-Counterdefendant-Appellant, *v.* VERDELL WILLIAMSON, Defendant-Counterplaintiff-Third-Party Plaintiff-Appellee.—(NATIONAL FARM BROKERS ASSOCIATION INC. *et al.,* Third-Party Defendants-Appellees.)

Second District    No. 77-524

Opinion filed July 13, 1979.—Rehearing denied September 12, 1979.

Tyler, Peskind and Solomon, of Aurora, for appellant.

Thomas W. Grant, of Yorkville, for appellees.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

This appeal presents the single question of whether an incorporated association which supplies its members, all licensed real estate brokers, with videotapes of commercial and farm property to assist the member broker in effecting a sale, is engaged in the activity of a "broker" of real estate within the meaning of section 4.02 of the Real Estate Brokers and Salesmen License Act (Ill. Rev. Stat. 1975, ch. 114½, par. 104.02).[1] We hold that it does not, and we affirm the decision of the trial court.

Despite the apparent simplicity of the issue, the facts of this case are somewhat complex. The instant litigation commenced when Sunny Ridge Realty and Insurance Agency, Inc. (Sunny Ridge) filed a complaint in the Circuit Court of Kendall County against Verdell Williamson, claiming the sum of $17,500 due as a 5% broker's commission upon the sale of Williamson's farm. Williamson initially answered, admitting the factual allegations of the complaint but denying liability to Sunny Ridge for the full amount of the commission. He subsequently filed a complaint for interpleader against Sunny Ridge, John Almburg (a real estate broker), and National Farm Brokers Association (National). In this pleading, Williamson admitted liability for the full amount of the broker's

---

[1] The Act was transferred to chapter 111, paragraph 5701 *et seq.* of the Illinois Revised Statutes in 1977.

commission, but also alleged that Almburg, Sunny Ridge and National had all claimed a part of the commission due and that he was unable to determine which of the claimants were legally entitled to it.

National then filed a cross-complaint against Sunny Ridge, claiming that the sum of $4,140 became payable upon the sale of the Williamson farm pursuant to a "membership agreement" entered into by Sunny Ridge and National. (The details of the membership agreement are more fully set forth below.) In this pleading, National alleged that it was a corporation organized to act as a real estate broker; that Sunny Ridge and National entered into a written agreement which required an association member (*i.e.*, Sunny Ridge) to submit listings of all nonresidential real estate to National within 30 days; that on January 27, 1976, at a time when the membership was in full force and effect, Sunny Ridge entered into a listing agreement with Verdell Williamson for his real estate; that in cooperation with John Almburg, Sunny Ridge produced a purchaser for the property which was subsequently sold for $345,000; that the listing agreement was within the scope of the membership agreement, and upon the sale National became entitled to a commission of $4,140 from Sunny Ridge.

Sunny Ridge filed an answer to National's cross-complaint, denying the allegation that National was authorized to do business as a broker, and denying that National was entitled to any portion of the commission. Both National and Sunny Ridge agreed that John Almburg was entitled to 50% of the commission (*i.e.*, $8,625) as the producing broker. Apparently, he was paid immediately, and did not participate further in the suit.

The membership agreement referred to above was attached as an exhibit to National's cross-complaint and was admitted into evidence at trial. The agreement provided in material part, as follows:

1. Each party warranted that it was a duly licensed real estate broker in the State of Illinois;

2. Each party agreed that National developed "certain valuable methods of marketing real property" and that the member desired to avail itself of those methods (however, neither these "methods" nor National's duties under the agreement were specified);

3. The member broker of the association (*i.e.*, Sunny Ridge) was required to submit all nonresidential listing in excess of $50,000 to the association;

4. In return for a membership fee, the broker would receive one color television receiver, one color tape player, and ten 30-minute video tapes with a minimum of 50 video listings;

5. Upon the sale of any listed property, the member agreed to pay National a commission based upon the selling price of the property (1.2% up to $600,000);

6. National agreed to refer all inquiries for listed real estate to the appropriate association member in the area.

The main issue at trial was whether National acted as a real estate broker with respect to the Williamson real estate transaction. The evidence showed that National was organized in the early 1970's by David Haas under the name "Teleview Realty, Inc." The corporation held, and has continued to hold, a corporate real estate broker's license issued by the Department of Registration and Education. Originally, it acted as a conventional brokerage; at that time, it participated directly in the sales of property and solicited listings through mass mailings. However, in December 1973, the business of the corporation changed from a conventional brokerage to a for-profit association of realtors organized to provide supportive services to its members in the sale of listed property. National's new business operated in this manner: upon receiving a listing of farm or commercial property, the association would make a color videotape of the real estate; these tapes were then distributed or made available to the association's members for their own use in attempting to sell the listed real estate. After National's change in business from a conventional brokerage to a service organization for brokers in 1973, it no longer did business with prospective purchasers or sellers of real estate, or the public at large.

In regard to the Williamson farm, the evidence further showed that the farm was listed with Sunny Ridge on January 27, 1976, and that a contract for sale was signed the following March. At the time of the listing, the membership agreement was still in full force and effect, although Sunny Ridge had given notice to terminate. Sunny Ridge was thus still obligated to pay National its fee on the sale of the property. However, David Haas, the only officer of National holding a broker's license, resigned in December 1975, and no other officer possessed a license until Shirley Haas became a vice-president in February. It is not clear from the record whether National performed any of its services for Sunny Ridge with respect to the Williamson listing.

After hearing this evidence, the trial court ruled that the videotape service rendered by National to Sunny Ridge did not constitute the activities of a real estate "broker" within the meaning of section 4.02 of the license act (Ill. Rev. Stat. 1975, ch. 114½, par. 104.02), and that Sunny Ridge was contractually obligated to pay National its fee set in the membership agreement. Judgment was thus entered in favor of National in the amount of $4,140, and Sunny Ridge appeals. If National is entitled to recover, there is no disagreement as to the amount due on the contract.

On this appeal, Sunny Ridge contends that National is barred from enforcing its commission due on the sale of the Williamson property because it engaged in brokerage activities at a time when no officer of the

corporation was licensed to act as a real estate broker as required by section 3 of the Act (Ill. Rev. Stat. 1975, ch. 114½, par. 103). Sunny Ridge notes that when David Haas resigned as president of National in December 1975, none of the officers employed by or associated with National possessed a broker's license until Shirley Haas was appointed vice-president in February 1976. During the interim, the Williamson transaction occurred. Since it is contended that National either performed or offered to perform brokerage activities at a time when none of its officers were licensed, Sunny Ridge argues that the trial court erred in entering judgment for National in the amount of $4,140.

On the other hand, National contends that it did not perform or agree to perform brokerage services in connection with the Williamson property. It argues that a corporation which supplies videotapes and engages in other supplementary services designed to aid licensed brokers in the sale of property does not act as a "broker" within the meaning of the Act.

The main issue presented for our consideration, therefore, is whether National acted, or agreed to act, as a real estate broker with respect to the sale of the Williamson farm. Section 4.02 of the Act (Ill. Rev. Stat. 1975, ch. 114½, par. 104.02) states:

> "(a) 'Broker' means any person, association, copartnership or corporation, who for compensation or valuable consideration sells or offers for sale, buys or offers to buy, or negotiates the purchase or sale or exchange of real estate, or who leases, or offers to lease, or rents or offers for rent, any real estate, or negotiates leases thereof, or of the improvements thereon for another or others, or who performs any of the foregoing acts for his own account while engaged in the business of buying or selling real estate."

The statutory definition of the term "broker" has been given an expansive interpretation by the courts. In *Kilbane v. Dyas* (1975), 33 Ill. App. 3d 439, 337 N.E.2d 217, and *Kilbane v. Collins* (1978), 56 Ill. App. 3d 707, 372 N.E.2d 415, this court held that a person who merely finds a purchaser for real property in return for a fee or commission is a "broker" within the intendment of section 4.02(a), even though the finder did not actually negotiate the price or fix the terms of sale. We noted in those decisions that the essential feature of the broker's employment is in bringing the buyer and seller together for the purpose of effecting a sale. To create an exception from the licensing provisions of the Act for persons who merely find a buyer, in our opinion, would have effectively defeated the intention of the General Assembly. We therefore refused to permit an unlicensed "finder" to recover his commission for obtaining a buyer for the seller's real estate. *Kilbane v. Collins* (1978), 56 Ill. App. 3d 707, 711-12; *Kilbane v. Dyas* (1975), 33 Ill. App. 3d 439, 441.

In certain situations, however, the courts have concluded that the activities of an unlicensed person in connection with the sale of real estate did not fall within the statutory definition of the term "broker." In *Federated Petroleum Services, Inc. v. Daniels* (1965), 56 Ill. App. 2d 236, 205 N.E.2d 741, plaintiff sought to recover a real estate broker's commission for procuring a buyer on the sale of commercial property. Defendant attempted to avoid liability for the commission on the ground that an employee of Federated, a Mr. Hickman, actively participated in the brokerage business of the plaintiff corporation although he was not licensed to act as a real estate broker. In holding that Hickman did not engage in brokerage activities, the court first quoted the definition of the word "broker" and then stated:

"Hickman's activity was not that of selling, buying, leasing, renting or negotiating various facets of the real estate transaction. His work for Federated was supplementary and complementary to that of plaintiff's president, Putnam. Hickman was responsible for assembling, assimilating and correlating the diverse financial and accounting information about petroleum clients. The material which he collected was incorporated in the brochure which Putnam originated and distributed. Hickman's contacts with defendants were necessary only for the purpose of acquiring financial information. The testimony indicated that much of Hickman's time spent with defendants was actually spent in consultation with their accountant. We do not believe that an individual, affiliated with a real estate broker, who is responsible for assembling financial and accounting data for the broker '* * * actively participates in the brokerage business of such association * * *.' " (Footnote omitted.) 56 Ill. App. 2d 236, 251.

In the instant case, National contracted in its membership agreement to use its marketing techniques to assist Sunny Ridge in its efforts to sell the Williamson real estate. Although National's duties are not specifically set forth in the membership agreement, its current president, William Alcock, testified at length during the trial about the advertising and marketing services provided to a member broker. Alcock stated that once a listing was received by a member broker and sent to the association, its personnel would videotape the property; where the listed property had a sales price in excess of $50,000, an aerial view was also taped. Pursuant to the membership agreement, each member was supplied with a video tape player and with the tapes of listed property as they became available. The member broker was free to use these videotapes to effect a sale of the property.

Under these circumstances, we are of the opinion that the services which National agreed to perform pursuant to the membership contract

do not constitute the activities of a "broker" within either the letter or spirit of section 4.02(a) of the Act. The promotional videotapes were not used by National to interest a prospective purchaser in the sale of listed property; rather, they were supplied to the association's members, all of whom were real estate brokers, for their own use in attempting to effect a sale. In short, the broker's benchmark—the bringing together of a prospective buyer and a ready and willing seller with a view towards completing a sale—is wholly absent here.

Moreover, we find little danger that the purposes of the license act will be circumvented or frustrated where, as here, an unlicensed individual, association, or corporation renders its services directly to a licensed broker and has no contact with the public at large. In such cases, the licensed broker, dealing directly with sellers and prospective purchasers of real estate, can provide the necessary technical expertise so that the general public will be fully protected. See *Federated Petroleum Services, Inc. v. Daniels* (1965), 56 Ill. App. 2d 236, 205 N.E.2d 741.

*Real Estate Multiple Listing Exchange v. Rubin* (1957), 7 Misc. 2d 194, 168 N.Y.S.2d 645, relied upon by Sunny Ridge, is not in point. An examination of the facts in that case discloses that the unlicensed corporation engaged in direct sales of real estate, solicited listings from the public, and otherwise acted no differently than any other conventional real estate brokerage; it did not offer services similar to those offered by National. This decision lends no support to Sunny Ridge's argument in the instant appeal.

Finally, Sunny Ridge contends that National is in fact a "broker" because it previously engaged in direct sales of real estate and because its fee is actually a commission for the sale of real estate. We find these arguments unmeritorious. While the record does reveal that National engaged in direct sales of real estate at one time, it is clear that these isolated transactions occurred prior to the association's change of business from a conventional brokerage in 1973, long before the Williamson transaction occurred. The irrelevance of these sales is obvious. In regards to the fee, there is nothing in the record to suggest that the commission earned by National is other than what it purports to be—a fee paid by the broker (and not the seller) for the videotape service.

The decision of the Circuit Court of Kendall County was correct in all respects, and its judgment is accordingly affirmed.

Affirmed.

SEIDENFELD and WOODWARD, JJ., concur.