BENJAMIN H. RABIN *et al.*, d/b/a Phoenix Partners, Plaintiffs-Appellants,
*v.* VERNON P. PRENZLER *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 82—1018

Opinion filed July 6, 1983.—Rehearing denied July 28, 1983.

L. Louis Karton, Ltd., and Gass & Lewis, Ltd., both of Chicago, for appellants.

George J. Lynch, of Burke, Griffin, Chomicz & Wienke, P.C., of Chicago, and Robert Markowitz, of Markowitz & Lawrence, of Bloomington, for appellees.

JUSTICE WHITE delivered the opinion of the court:

Plaintiffs, Benjamin H. Rabin and George B. Erwood, doing business as Phoenix Partners, appeal from a final order of the circuit court of Cook County dismissing their amended complaint against defendants, Vernon P. Prenzler, Richard H. Hundman, Hundman Oil and Lumber Company, Inc., Baumgart Building Center, Inc., Kent West Side Lumber Company, and Schwulst Building Center, Inc., doing business as College Hills Partnership. The issues raised on appeal are: whether the amended complaint alleges that plaintiffs acted as real estate brokers within the meaning of section 4.02(a) of the Real Estate Brokers and Salesmen License Act (Ill. Rev. Stat. 1977, ch. 111, par. 5706(a)), and if so, whether section 7 of the Act (Ill. Rev. Stat. 1977, ch. 111, par. 5714), prevents recovery in an action or suit in Illinois courts by plaintiffs for compensation for services rendered.

The amended complaint contains six counts. All six counts allege: that on or prior to November 1976, Robert Markowitz, as trustee under the terms of a trust agreement, owned certain real estate; that on or prior to that time, defendants had established a partnership known as College Hills Partnership; that this partnership was the beneficiary under and pursuant to the land trust agreement; that defendants intended to improve the real estate with a retail and commercial shopping center, with space to be leased to major department stores and various smaller retail and commercial tenants; that on November 8, 1976, plaintiffs and defendants entered into a written agreement; that the written agreement provided, in part, that plaintiffs would assist College Hills Partnership in obtaining tenants for the project, and that "[u]pon execution of each lease with a tenant or tenants introduced to the project by [plaintiffs], and registered with [the partnership, the partnership] shall pay [plaintiffs] a fee equal to seven percent (7%) of one (1) year's rental under such lease, plus two percent (2%) of the balance of the aggregate rental for the lease term (excluding any optional renewal periods). ***"; that after November 8, 1976, plaintiff Rabin undertook to perform the services of introducing pro-

spective tenants to defendants' proposed shopping center; that plaintiffs introduced prospective tenants to defendants' shopping center and registered them with defendants; that defendants, their leasing agents, or College Hills Mall Company, handled all negotiations and leasing with the prospective tenants introduced by plaintiff Rabin; and that an enclosed shopping center, commonly known as College Hills Mall, has been constructed on the real estate.

Count I of the amended complaint contains the following additional allegations: that defendants or their representatives have negotiated and caused College Hills Mall Company, as landlord, to enter into 17 written leases with persons introduced by plaintiffs to defendants' shopping center; that pursuant to the agreement, the plaintiffs are entitled to recover $73,541.37 from defendants; that defendants have refused to pay plaintiffs that amount; and that plaintiffs have performed all terms and conditions of the agreement required to be performed by them. The prayer for relief in count I demands judgment against defendants in the amount of $73,541.37, interest thereon, and costs of suit. Count II of the amended complaint realleges these allegations and also alleges that in the performance of their work of introducing prospective tenants to defendants' shopping center, plaintiffs were not required to be licensed as real estate brokers, but that if such licenses were required, plaintiffs were licensed Illinois real estate brokers at all relevant times. This count specifically alleges that plaintiff Rabin was licensed as a real estate broker on December 28, 1976, and that plaintiff Erwood was licensed as a real estate broker on June 1, 1977. The prayer for relief in count II is the same as in count I.

Count III of the amended complaint, in addition to the common allegations, alleges: that plaintiff Rabin introduced Montgomery Ward and Company (Wards) and Carson Pirie Scott and Company (Carsons) to defendants and registered them in writing with defendants; that Wards and Carsons have opened stores in defendants' shopping center; that on terms negotiated by defendants, Wards and Carsons agreed that they would purchase part of the real estate and build their own respective stores in lieu of entering into leases with defendants under and pursuant to which defendants would have constructed stores and leased them to Wards and Carsons; that portions of the real estate were conveyed from the trustee of the land trust to each department store company, or to its respective subsidiary or affiliated company; that Wards and Carsons have opened retail stores in defendants' shopping center; that based upon the amount of retail space in each store, the fair rental value of such space and a usual

lease term between 25 and 30 years, leases for the stores constructed would have yielded between $17,600,000 and $21,120,000 in rent; that plaintiffs have performed all of the terms and conditions of the agreement required to be performed by them; and that under the terms of the agreement, plaintiffs are entitled to compensation between $387,200 and $457,600. The prayer for relief in count III demands an accounting of the "terms and arrangements" entered into by defendants and each department store company, or its respective subsidiary or affiliated company, and judgment against defendants in the amount of compensation due plaintiffs under the agreement. Count IV of the amended complaint is identical to count III, except that it adds the allegations concerning broker's licenses contained in count II. The prayer for relief in count IV is identical to the prayer for relief in count III.

Counts V and VI of the amended complaint seek recovery of compensation from defendants on a *quantum meruit* theory. The allegations of count V are virtually identical to those of count III, except that count V omits the allegations of count III relating to the computation of the compensation to which plaintiffs are entitled with respect to the transactions between defendants and Wards and between defendants and Carsons. Rather, count V alleges: that the fair value of the finders services rendered by plaintiffs to defendants in introducing Wards and Carsons to defendants' shopping center is between $176,000 and $220,000; that defendants had requested plaintiffs' services and have accepted the benefits thereof; that defendants understood that they would be obligated to pay for such services; and that plaintiffs are entitled to a finder's fee between $176,000 and $220,000. The prayer for relief demands judgment against defendants in an amount between $176,000 and $220,000, plus costs of the lawsuit. Count VI of the amended complaint is identical to count V, except that it adds allegations concerning broker's licenses similar to those contained in count II. The prayer for relief in count VI is identical to the prayer for relief in count V.

One of the exhibits attached to the amended complaint is a letter dated April 1, 1977, from plaintiff Rabin to defendant Prenzler. The letter, in relevant part, states:

"We anticipate a somewhat immediate response to our national and midwest presentations. Therefore, we urge you to provide us with a form of lease acceptable to your total partnership as well as to your lender. We have found in the past that it is most advantageous to present a lease for execution to each prospect as quickly as terms are agreed upon."

The same letter refers to a "split in the leasing responsibility," and the letter suggests that plaintiffs had such responsibilities. Another exhibit attached to the amended complaint is a letter dated September 1, 1977, from Rabin to Prenzler, relating to the desire of Golden Bear Family Restaurants, Inc., to locate at the shopping center. The letter, in part, states: "Inasmuch as we are cobrokering this with Landau and Heyman, Chicago, we must require a full commission payable on the execution of a lease." It also states: "Please advise whether you want us to obtain and submit the tenant's standard lease form or that you will be preparing yours."

There were also exhibits attached to plaintiffs' answer to defendants' motion to dismiss the amended complaint. The first exhibit is a letter dated April 1, 1977, from Rabin to Alberts Inc., which invited Alberts Inc. to contact Phoenix Partners to discuss its inclusion as a participant in College Hills Mall. In the letter, Rabin refers to himself as "Exclusive leasing agent for College Hills Mall." Also attached to plaintiffs' answer as exhibits were letters from Rabin to Carsons and to Wards. Some of these letters refer to "negotiations" by plaintiffs; however, the nature of these negotiations is unclear.

The circuit court granted defendants' motion to dismiss the amended complaint, finding that "[p]laintiffs clearly were engaged in negotiations and acted as brokers without having the required licenses ***." This appeal is from the order dismissing the amended complaint.

Section 3 of the Real Estate Brokers and Salesmen License Act (Ill. Rev. Stat. 1977, ch. 111, par. 5703) provides: "It is unlawful for any person to act as a real estate broker or real estate salesman *** without a certificate of registration issued by the Department of Registration and Education." The word "broker" is defined by section 4.02(a) of the Act (Ill. Rev. Stat. 1977, ch. 111, par. 5706):

> " 'Broker' means any person, association, copartnership or corporation, who for compensation or valuable consideration sells or offers for sale, buys or offers to buy, or negotiates the purchase or sale or exchange of real estate, or who leases, or offers to lease, or rents or offers for rent, any real estate, or negotiates leases thereof, or of the improvements thereon for another or others, or who performs any of the foregoing acts for his own account while engaged in the business of buying or selling real estate."

Section 7 of the Act (Ill. Rev. Stat. 1977, ch. 111, par. 5714) prohibits recovery of compensation for an act done or a service rendered by an unregistered person in the following words:

"No action or suit shall be instituted, nor recovery therein be had, in any court of this State by any person, copartnership, association, or corporation for compensation for any act done or service rendered, the doing or rendering of which is prohibited under the provisions of this Act to other than registered real estate brokers or real estate salesmen unless such person, copartnership, association, or corporation was duly registered hereunder as a real estate broker or real estate salesman prior to the time of offering to perform any such act or service or procuring any promise or contract for the payment of compensation for any such contemplated act or service."

■ The written agreement between plaintiffs and defendants, which was attached to the amended complaint as an exhibit, indicates that it was entered into on November 8, 1976. Since the amended complaint alleges that plaintiff Rabin was licensed as a real estate broker on December 28, 1976, and that plaintiff Erwood was licensed as a real estate broker on June 1, 1977, the plain words of section 7 would prohibit recovery by them based upon the agreement "for any act done or service rendered, the doing or rendering of which is prohibited *** to other than registered real estate brokers or real estate salesmen." Section 7 clearly bars recovery for such acts or services, unless the person claiming compensation was "duly registered *** as a real estate broker or real estate salesman prior to the time of offering to perform any such act or service or procuring any promise or contract for the payment of compensation for any such contemplated act or service." (Ill. Rev. Stat. 1977, ch. 111, par. 5714; see *White v. Chicago Title & Trust Co.* (1981), 99 Ill. App. 3d 323, 332, 425 N.E.2d 1017; *Rubenson v. MSI Real Estate* (1982), 108 Ill. App. 3d 546, 549, 438 N.E.2d 1202.) Neither individual plaintiff was a licensed real estate broker prior to the execution of the agreement.[1] Thus, plaintiffs cannot recover compensation under the agreement for acts done or services rendered, if those acts or services are restricted by the Real Estate Brokers and Salesmen License Act to registered real estate brokers or real estate salesmen.

In this regard, we observe that counts I and II of the amended complaint seek recovery pursuant to the agreement. In counts III and IV, plaintiffs seek compensation for introducing Carsons and Wards to

---

[1]Exhibits attached to defendants' motion to dismiss plaintiffs' amended complaint showed: that plaintiff Rabin became licensed as a real estate broker on December 28, 1976; that plaintiff Erwood became licensed as a real estate broker on June 1, 1977; and that no real estate license had been issued to Phoenix Partners.

defendants. These counts allege a purchase of real estate by Carsons and Wards, a transaction not contemplated by the agreement between plaintiffs and defendants, but nevertheless, these counts compute the amount of compensation to which plaintiffs are entitled according to the terms of the agreement. Counts V and VI also seek compensation for introducing Carsons and Wards to defendants, but these counts allege that plaintiffs are entitled to recover the fair value of services rendered by them and accepted by defendants. Although only counts I and II seek recovery of compensation purely under the agreement between the parties, we are of the opinion that plaintiffs cannot recover under any of the counts, if the acts or services for which compensation is sought are restricted by the statute to registered real estate brokers and real estate salesmen. All six counts allege the existence of the written agreement entered into between plaintiffs and defendants, and, as noted above, section 7 bars recovery for acts or services restricted to real estate brokers and real estate salesmen, unless the person claiming compensation was "duly registered *** as a real estate broker or real estate salesman prior to the time of offering to perform any such act or service or procuring any promise or contract for the payment of compensation for any such contemplated act or service." The amended complaint clearly alleges that neither individual plaintiff was licensed "prior to the time of offering to perform any such act or service," or prior to the time of "procuring any promise or contract for the payment of compensation for any such contemplated act or service." Accordingly, no recovery may be had under any of the counts if plaintiffs are seeking compensation for acts or services restricted by statute to registered real estate brokers or real estate salesmen.

Thus, the dispositive question is whether the amended complaint alleges that plaintiffs acted as real estate brokers. If so, then the circuit court properly dismissed the complaint. The answer to this question depends upon the construction given to the definition of the word "broker" contained in section 4.02 of the Act (Ill. Rev. Stat. 1977, ch. 111, par. 5706). According to section 4.02, the term "broker" includes "any person [or copartnership] *** who leases, or offers to lease, or rents or offers for rent, any real estate, or negotiates leases thereof, or of the improvements thereon for another or others."

In *White v. Chicago Title & Trust Co.* (1981), 99 Ill. App. 3d 323, 325, the court observed that the Real Estate Brokers and Salesmen License Act is "a broad statutory system which is remedial and therefore should be liberally construed." The remedial nature of the Act is clear. Indeed, section 1 of the Act (Ill. Rev. Stat. 1977, ch. 111, par.

5701) provides: "The intent of the legislature in enacting this statute is to evaluate the competency of persons engaged in the real estate business for the protection of the public." As stated in *Central National Bank v. Alexander Marketing, Inc.* (1977), 47 Ill. App. 3d 58, 59-60, 361 N.E.2d 766, the Act attempts to protect the public "through an examination and licensing system," and "[i]t enforces this system, in part, by prohibiting unlicensed persons acting as brokers and salesmen from collecting compensation for any services they may render." See also *White v. Chicago Title & Trust Co.* (1981), 99 Ill. App. 3d 323, 327-28; *Kilbane v. Collins* (1978), 56 Ill. App. 3d 707, 713, 372 N.E.2d 415.

Plaintiffs assert that they did not act as real estate brokers. In fact, their amended complaint alleges that they acted as introducers or finders.

Some Illinois cases have recognized a distinction between finders and brokers. (*Business Development Services, Inc. v. Field Container Corp.* (1981), 96 Ill. App. 3d 834, 842, 422 N.E.2d 86; *Ruskin v. Rodgers* (1979), 79 Ill. App. 3d 941, 960, 399 N.E.2d 623.) In *Business Development Services, Inc.,* the court stated: "A finder is defined as an intermediary who contracts to find, introduce and bring together parties to a business opportunity, leaving the ultimate negotiations and consummation of the business transaction to the principal *** [and] is distinguishable from a broker in that the former is not required to perform the duties of a broker in negotiating the contract." (96 Ill. App. 3d 834, 842; see *Ruskin v. Rodgers* (1979), 79 Ill. App. 3d 941, 960.) It must be noted, however, that *Business Development Services, Inc.* did not involve the application of provisions of the Real Estate Brokers and Salesmen License Act, and that *Ruskin* is clearly distinguishable from the instant case on its facts. In *Ruskin,* intervening plaintiffs, a real estate consulting corporation and an individual real estate broker, contended that defendant, a real estate salesman, had performed brokerage services in the sale of certain property and that they were entitled under a brokerage commission agreement to part of the amount that would be paid to defendant. The appellate court held that the payments made to defendant were not within the scope of the agreement between the intervening plaintiffs and defendant, and one of its reasons for so holding was that defendant did not act as a real estate broker but was simply a finder.

■ In at least four Illinois appellate court cases since 1975, the statutory definition of the term "broker" has been given an expansive interpretation. (*People ex rel. Fahner v. Community Hospital* (1982), 108 Ill. App. 3d 1051, 1062, 440 N.E.2d 200; *Sunny Ridge Realty &*

*Insurance, Inc. v. Williamson* (1979), 74 Ill. App. 3d 481, 484, 393 N.E.2d 23; *Kilbane v. Collins* (1978), 56 Ill. App. 3d 707, 712, 372 N.E.2d 415; *Kilbane v. Dyas* (1975), 33 Ill. App. 3d 439, 441, 337 N.E.2d 217.)[2] These cases support the proposition that an unlicensed real estate broker or salesman cannot circumvent the requirements of the Real Estate Brokers and Salesmen License Act merely by showing that his services were to be limited to the procurement of an interested party to the real estate transaction. (*Kilbane v. Collins; Kilbane v. Dyas.*) Thus, the requirements of the Act extend to individuals categorizing themselves as "finders," "originators," or "introducers," who merely introduce a buyer to a seller of real estate, but do not negotiate the terms of the transaction between the parties. (*Community Hospital; Kilbane v. Collins.*) In addition, the requirements of the Act, assuming the correctness of these cases, would be equally applicable to individuals who merely introduce a lessee to a lessor of real estate, but do not negotiate the terms of the lease.

These four cases recognize that the essential feature of a broker's employment is to bring parties to a transaction together for the purpose of effecting the transaction, and that to create an exception from the licensing provisions of the Act for persons who merely find a buyer or lessee would defeat the intention of the General Assembly in enacting it. *Williamson; Kilbane v. Collins* (1978), 56 Ill. App. 3d 707, 713; *Kilbane v. Dyas* (1975), 33 Ill. App. 3d 439, 441-42.

Plaintiffs, in effect, argue that we should give the word "negotiates" in the statutory definition of "broker" a strict construction. However, we have already observed that the Real Estate Brokers and Salesmen License Act should be liberally construed, and case law indicates that a strict construction of the word "negotiates" would lead to an untenable result. Here, plaintiffs' amended complaint alleges that they are entitled to recover compensation for introducing prospective tenants and Wards and Carsons to defendants. In effect, they are alleging that they arranged the preliminaries of a business transaction. (See *Kilbane v. Dyas* (1975), 33 Ill. App. 3d 439, 441-42; Black's Law Dictionary 934 (5th ed. 1979).) Thus, we are of the opin-

---

[2]The Real Estate Brokers and Salesmen License Act became effective October 1, 1973, and it repealed the Real Estate Broker Registration Act of 1921. In *Kilbane v. Collins* (1978), 56 Ill. App. 3d 707, the appellate court clearly applied the 1965 version of the repealed Act. In addition, the opinion in *Kilbane v. Dyas* (1975), 33 Ill. App. 3d 439, does not specify which statute was applied in that case. We observe, in this regard, that the provisions of sections 3, 4.02 and 7 of the current Act that are applied in the instant case were also contained in the repealed Act. See Ill. Rev. Stat. 1971, ch. 114½, pars. 1, 2, 2b.

ion that the allegations of the amended complaint that plaintiffs acted as introducers alleged negotiations by plaintiffs and that the allegations were sufficient to bring them within the statutory definition of the term "broker."

■ Since the amended complaint alleges that plaintiffs were not registered real estate brokers prior to the time of offering to perform acts or services restricted by statute to licensed real estate brokers or salesmen or prior to the time of procuring any promise or contract for the payment of compensation for any such contemplated act or service, plaintiffs, assuming the allegations of the amended complaint are true, are not entitled to compensation for services in introducing defendants to eventual tenants and to Wards and Carsons. Accordingly, we conclude that the circuit court properly dismissed plaintiffs' amended complaint.

For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

RIZZI and O'CONNOR, JJ., concur.