SCOTT/HUBBARD COMPANY, INC., Plaintiff,

v.

SIKA CHEMICAL CORPORATION, etc., Defendant.

No. 87 C 4750.

United States District Court, N.D. Illinois, E.D.

March 16, 1989.

Michael J. Philippi, Michael T. Trucco, Robert A. Chapman, Coffield Ungaretti Harris & Slavin, Chicago, Ill., for plaintiff.

Rick M. Schoenfield, Ettinger Schoenfield & Katz, Chicago, Ill., John J. Carlin, Florham Park, N.J., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiff Scott/Hubbard Company, Inc. seeks recovery of a $210,000 finder's fee from defendant Sika Chemical Corporation (Sika) for providing information regarding the availability of a third party for acquisition. Sika, in its affirmative defense, responds that the suit is barred because plaintiff failed to comply with state licensing requirements applicable to brokers. Scott/Hubbard moves to strike the affirmative defense pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. That motion is denied.

## BACKGROUND

Choice-of-law questions are implicated in this case. In an earlier memorandum and order, *Scott/Hubbard Co. v. Sika Chemical Corp.*, 694 F.Supp. 1311 (N.D.Ill.1988), we rejected defendant's contention that Missouri law controlled since the nexus between Missouri and the finder's fee agreement was minimal, and held that either New Jersey or Illinois law controlled in this dispute. Although the parties cited to Illinois case law, neither addressed the applicability of New Jersey law to the licensing question and we reserved judgment on the conflict-of-law issue pending submission of additional memoranda.

## FACTS

For purposes of this motion we consider the facts in the light most favorable to Sika. *See Coca–Cola Co. Foods Div. v. Olmarc Packaging Co.*, 620 F.Supp. 966, 970 (N.D.Ill.1985); 5 C. Wright & A. Miller, *Federal Practice and Procedure*, Section 1363.

In late October 1986, Sika, a New Jersey corporation, received information from Scott/Hubbard, an Illinois corporation, regarding the possibility of acquiring a chemical company. This information was sent by Peter Poulos, president of Scott/Hubbard. Sika alleges that Poulos represented Scott/Hubbard to be an agent or broker for the proposed chemical company. Upon receiving this information, Reinhard Rutz, president of Sika, suspected that the company referred to by Scott/Hubbard was "Chemsco," a subsidiary of Ash Grove Cement Company.

On November 4, 1986, in a phone conversation with Poulos, Rutz learned that the company for sale was indeed Chemsco. Poulos also told Rutz he believed Sika could acquire Chemsco for approximately ten or eleven million dollars and encouraged Rutz to contact James Sunderland of Ash Grove Cement Company directly. When Rutz contacted Sunderland he was told that Scott/Hubbard did not represent Ash Grove, and that if he wished to acquire Chemsco he should engage in direct negotiations.

Rutz then received a letter from Scott/Hubbard on November 10, 1986, containing additional information on Chemsco and a proposed fee agreement. Sika did not respond to this letter and instead contacted Chemsco to negotiate its acquisition. Rutz notified Poulos on December 8, 1986, that Sika would not accept Scott/Hubbard's proposed agreement but did agree to meet with Poulos to discuss what services Scott/Hubbard could provide Sika.

On December 10, 1986, Poulos traveled to New Jersey to meet with Rutz. In New Jersey, Rutz offered to pay a fee for information provided to Sika if Scott/Hubbard afforded additional services relating to the consummation of the transaction. A week after receiving this offer from Sika, Scott/Hubbard notified Rutz that it rejected the offer and demanded compensation for the services it had provided.

## DISCUSSION

█ The first step in any choice-of-law dispute is to determine whether the laws of the subject jurisdictions are actually in conflict. If the two states would resolve the licensing question in the same manner, there is no conflict and we would treat the finder's fee agreement as if it was both made and performed in one state. *See* Restatement (Second) Conflicts of Law § 186 comment c.

New Jersey courts do not distinguish between finders and brokers for the purposes of real estate licensing requirements. *Corson v. Keane*, 4 N.J. 221, 72 A.2d 314 (1950). *See also Baron & Co. v. Bank of New Jersey*, 504 F.Supp. 1199, 1205–06 (D.N.J.1981) (without regard to labels, the production of a purchaser to meet the seller's price is conduct within the reach of New Jersey's licensing statute). Under an old New Jersey rule an unlicensed person may not collect any compensation for his role in the sale of a business that includes the transfer of real estate, unless the terms of the agreement expressly divide the sale of the real property from the remainder of the sale. *See Kenney v. Paterson Milk & Cream Co.*, 110 N.J.L. 141, 164 A. 274 (E. & A. 1933). This rule has come under considerable attack, and in *Kazmer–Standish Consultants, Inc. v. Schoeffel Instruments Corp.*, 89 N.J. 286, 288, 445 A.2d 1149, 1150 (1982), the New Jersey Supreme Court abandoned it for the minority view that a business broker, although not licensed to sell real estate, may appropriately recover a commission on the portion of the sale of an ongoing business attributable to personal property. Thus, under New Jersey law, Sika's affirmative defense would limit some but not all of Scott/Hubbard's recovery.

In our earlier memorandum and order we assumed that Illinois would not impose licensing requirements on a finder in connec-

tion with a sale of a business that included the transfer of real estate. However, closer scrutiny of the case law reveals that this assumption was in error. Although in some circumstances Illinois courts distinguish between brokers (who participate in the negotiation of a sale) and finders (who merely bring together the parties to a sale), *e.g., Business Development Services, Inc. v. Field Container Corp.*, 96 Ill.App.3d 834, 842, 422 N.E.2d 86, 93, 52 Ill.Dec. 405, 412 (5th Dist.1981); *Modern Tackle Company v. Bradley Industries*, 11 Ill.App.3d 502, 507, 297 N.E.2d 688, 692 (1st Dist. 1973), it is fairly clear that a finder in Illinois involving the sale of real estate must satisfy the licensing requirements of the Real Estate License Act of 1983, Ill. Rev.Stat. ch. 111, para. 5803 (formerly the Real Estate Brokers and Salesmen License Act, Ill.Rev.Stat. ch. 111 para. 5701 (1978)).[1] *See Rabin v. Prenzler*, 116 Ill. App.3d 523, 530, 451 N.E.2d 1331, 1337, 72 Ill.Dec. 8, 14 (1st Dist.1983); *People ex rel. Fahner v. Community Hospital of Evanston*, 108 Ill.App.3d 1051, 1062, 440 N.E.2d 200, 208, 64 Ill.Dec. 648, 656 (1st Dist.1982); *Kilbane v. Collins*, 56 Ill.App.3d 707, 712, 372 N.E.2d 415, 419, 14 Ill.Dec. 404, 408 (2nd Dist.1978); *Kilbane v. Dyas*, 33 Ill. App.3d 439, 441, 337 N.E.2d 217, 220 (2nd Dist.1975). As with New Jersey law, Illinois expansively interprets the Real Estate License Act. Therefore, if Scott/Hubbard acted here as a finder in a real estate transaction, Sika's affirmative defense may have some merit.[2]

The question remains, however, whether Illinois would follow the New Jersey rule in *Kazmer–Standish*, limiting recovery in the sale of a business to the value of the personal property, or whether it follows some other rule of law. Although there is little Illinois case law on the subject, we conclude indication from an Illinois court points in a different direction.

In *Fahner, supra*, the First District of Illinois addressed the issue of recovery of a finder's fee in connection with the sale of Community Hospital in Evanston. The finder there relied on the rule in other jurisdictions allowing recovery of a fee where an ongoing business was the principal subject matter of the sale and where the transfer of real estate was merely incidental to the transaction. The court appeared to approve this rule. However, it found that the sale of Community Hospital, which was no longer operating, was actually the sale of the hospital's real and personal property and not the sale of an ongoing business.

It is not conclusive what rule would apply in Illinois. The finder cases cited *supra*, establishing the Act's coverage over finders, involved real estate transactions, and the finder cases involving the sale of businesses that this court has found fail to address the licensing issue. However, although *Fahner* was inconclusive, the indication from its reasoning supports the view that Illinois will allow recovery by an unlicensed finder when real estate is only incidental to the entire transaction. Further, it is clear in *Fahner* that when the sale of real estate predominates the transaction, Illinois prohibits recovery for that portion of the sale concerning personal property. This view departs from the New Jersey rule in *Kazmer–Standish*.

■ Since there is a conflict between Illinois and New Jersey, we now turn to

---

**1.** Neither *Business Development* nor *Modern Tackle* involved claims that the finders were not entitled to a commission based on their failure to be licensed brokers. Although the court in *Modern Tackle* cites a California case for the proposition that finders need not be licensed, that statement was *dicta* and appears to be against the weight of Illinois authority.

**2.** The holding in *Worner Agency, Inc. v. Doyle*, 133 Ill.App.3d 850, 479 N.E.2d 468, 88 Ill.Dec. 855 (4th Dist.1985), is not contrary to our interpretation of Illinois law. In relevant part, at issue in *Worner* was whether a finder of parties to a construction contract was required to receive written consent to represent all the parties, in compliance with section 18(e)(5) of the Real Estate License Act, Ill.Rev.Stat. ch. 111, ¶ 5818(e)(5). 133 Ill.App.3d at 860, 479 N.E.2d at 475, 88 Ill.Dec. at 862. Distinguishing between finders and brokers for the purpose of this provision, the court held the Act did not apply to finders. Although the court stated in broad language that the Act was inapplicable, *Worner* did not concern licensing requirements on finders of parties to a real estate contract. Given the clear line of decisions in Illinois to the contrary, we think *Worner* is inapposite.

the choice-of-law question. Illinois law requires that we apply the "most significant contacts" approach when there is a choice of law dispute involving contracts. *See Palmer v. Beverly Enterprises*, 823 F.2d 1105, 1109 (7th Cir.1987); *Scott/Hubbard*, 694 F.Supp. at 1313. Under the most significant contacts test, we consider the following five factors: (1) the place of contracting; (2) the place of negotiation; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. Restatement (Second) Conflicts of Law § 188(2).

Since the place of negotiations and contracting are evenly divided between Illinois and New Jersey, we think Illinois would look to the place of performance for the resolution of this choice-of-law dispute. Under these circumstances, whether there was a finder's agreement or whether plaintiff must pursue recovery under a theory of *quantum meruit*, Illinois appears to be the locus of Scott/Hubbard's finder activities. Further, although the respective parties are domiciled in Illinois and New Jersey, Scott/Hubbard, as the purported finder, resides in Illinois. We think Illinois' interest in regulating finders domiciled here is greater than New Jersey's interest in extending its licensing requirement outside its own jurisdiction.

## CONCLUSION

For the foregoing reasons, we conclude that Illinois law applies to this contract dispute; that Illinois would apply its licensing requirements to finders involved in a real estate transaction; but that these requirements will apply only when the sale of real estate is predominant, as opposed to when it is only incidental to the sale of an ongoing business. Because this latter issue cannot be resolved now, we deny Scott/Hubbard's motion to strike Sika's affirmative defense.