NO. 5-96-0500

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_________________________________________________________________

WILLIAM B. THOMAS and ROBERT S.      )  Appeal from the

THOMAS,                              )  Circuit Court of

                                     )  Wayne County.

     Plaintiffs-Appellants,          )  

                                     )

v.                                   )  No. 92-L-12

                                     )

JOHN DAUBS, d/b/a DAUBS DISPOSAL     )  Honorable

SERVICE, and DAUBS LANDFILL, INC.,   )  Robert S. Hill and

                                     )  Charles L. Quindry,

     Defendants-Appellees.           )  Judges, presiding.

_________________________________________________________________

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiffs, William B. Thomas and Robert S. Thomas, sought to recover a 6% finder's fee from defendants, John Daubs, doing business as Daubs Disposal Service, and Daubs Landfill, Inc., for obtaining a buyer for the landfill, as per an alleged oral contract between the parties.  Defendants filed a joint motion for the involun­tary dismissal of plaintiffs' complaint, pursuant to section 2-619(a)(9) of the Code of Civil Procedure (the Code) (735 ILCS 5/2-619(a)(9) (West 1994)), on the ground that the Real Estate License Act of 1983 (the Act) (225 ILCS 455/1 
et seq.
 (West 1994)) bars the action because plaintiffs are not licensed to act as brokers or salespersons of real estate.  The circuit court of Wayne County granted defendants' motion, and plaintiffs now appeal.  The issue we are asked to consider is whether the Act bars a cause of action to collect a finder's fee under an oral contract for the sale of a landfill when the finder is unlicensed.  We affirm. 

FACTS

In their amended complaint, plaintiffs allege that they entered into an oral agreement with defendants in January 1988, whereby they would act to find a purchaser for defendants' new regional solid waste pollution control facility, the rights to the environ­mental permits for the operation of the facility, the real estate to be utilized as a landfill, and the equipment and other personal property used at the facility.  Plaintiffs' complaint further alleges that on March 15, 1990, defendants entered into a written contract with Waste Management Profession­als, Inc., acting as a nominee, agent, or other entity on behalf of Mid-American Waste Systems, Inc., for the acquisition of the ongoing business, real estate, operating permits, and equipment through a stock transfer or purchase.  Plaintiffs allege a purchase price of $3.3 million, plus 10% of all revenues from the operation of the landfill.  Plain­tiffs further allege they made the original contract with Mid-American Waste Systems, Inc., which ultimately led to the deal, that they performed all the conditions on their part, and that they are, therefore, entitled to their finder's fee of 6% of the purchase price.  Plaintiffs claim that their finder's fee amounts to at least $198,000, plus 6% of the share of the revenues from the landfill to be received by defendants.

Plaintiffs' amended complaint, like the original complaint, is in four counts.  Count I is based upon the theory of breach of an oral contract.  Count II is based upon the theory of promissory estoppel and makes additional allegations that defen­dants promised and represented to plaintiffs that they would pay a finder's fee of 6% on the gross sales price if plaintiffs extended their best efforts in contacting prospective buyers across the country, which plaintiffs did, and, therefore, plaintiffs are entitled to the finder's fee.  Count III of the amended complaint is based upon the theory of 
quantum meruit
 and adds additional allegations that the work, labor, and services performed by plaintiffs on defendants' behalf have a reasonable value of 6% of the gross sales price of the business, property, and assets sold by defendant to Mid-American Waste Systems, Inc.  Count IV is based upon a theory of unjust enrichment.  It contains additional allegations that defendants benefited from the work, effort, and services provided by plain­tiffs and that defendants would be unjustly enriched if allowed to retain the benefit of the services of plaintiffs without paying for the services.  

On August 2, 1994, defendants filed a joint motion for involuntary dismissal based upon affirmative matter, pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 1994)), and a memorandum of law in support of said motion.  Defendants' motion to dismiss was based upon plaintiffs' failure to allege that either one of them held the requisite license necessary to assert a claim for a commission as required by the Act.  Plaintiffs responded that the Act was inapplicable because the sale here was the sale of "stock of Daubs Landfill, Inc. and not the sale of real estate."  On November 30, 1994, the circuit court entered an order granting defendants' motion for involuntary dismissal on the basis that plaintiffs were not licensed to act as brokers or salespersons by the Department of Professional Regulation and, thus, plaintiffs' claims were prohibited by the Act.  The trial court's original dismissal order contained the words "with prejudice," but these words were crossed out with a pen or marker.  Plaintiffs' counsel, apparently believing that the amended complaint had been dismissed with prejudice, then filed a notice of appeal on December 2, 1994, asking leave to amend their pleadings.  We issued a Supreme Court Rule 23 order (Offi­cial Reports Advance Sheet No. 15 (July 20, 1994), R. 23, effec­tive July 1, 1994) dismiss­ing plaintiffs' appeal for want of jurisdiction on the basis that the complaint had not been dismissed with prejudice, and we remanded the case for further proceedings.  
Thomas v. Daubs
, No. 5-94-0817 (October 5, 1995).  On November 29, 1995, plaintiffs filed a motion for the entry of a trial court statement under Supreme Court Rule 308 (134 Ill. 2d R. 308).  After a hearing, the trial court denied the motion.  Following the denial of said motion, plaintiffs requested leave to amend the complaint.  The trial court granted plaintiffs 28 days to file an amended complaint.  

Plaintiffs did not file any additional pleadings.  On April 22, 1996, plaintiffs filed a motion for extension of time to disclose opinion witnesses.  Defendants objected, and ultimately, the trial court denied plaintiffs' motion.  On May 30, 1996, plaintiffs moved for the reconsideration of the trial court's November 30, 1994, decision to dismiss their amended complaint.  On July 10, 1996, the trial court denied plaintiffs' motion to reconsider but granted plaintiffs' alternative request for the entry of a final order of dismissal.  Plaintiffs now appeal.  

ANALYSIS

The issue we are asked to address is whether the Act bars a cause of action to collect a finder's fee under an oral contract for the sale of a landfill when the finder is unlicensed.  Plaintiffs contend that the Act does not apply to the facts alleged in their amended complaint because the Act specifically enumerates the activities that make one a broker, and all such activities are directed toward real estate, not toward a business.  Plaintiffs insist that the sale of the landfill here in question was the sale of a business, not the sale of real estate.  Defendants respond that the Act, which requires that a person be licensed in order to claim a commission, applies to the facts herein because it cannot be said that the land is merely incidental to the sale.  We agree.   The trial court based its determination on the Act, which requires, 
inter alia
, the licensing of real estate brokers.  Section 3 of the Act specifically provides:

"§3.  It is unlawful for any person, corporation, limited liability company, or partnership to act as a real estate broker or real estate salesperson, or to advertise or assume to act as such broker or salesperson, without a properly issued sponsor card or a license issued by the Department of Professional Regulation under this Act."  225 ILCS 455/3 (West 1994).

The overall purpose of the Act "is to evaluate the competency of persons engaged in the real estate business and to regulate such business for the protection of the public."  225 ILCS 455/1 (West 1994).  Section 4(4) of the Act defines "broker" as follows:

"(4) `Broker' means an individual, partnership, limited liability company, or corporation, other than a real estate salesperson, who for another and for compensation:

(a) Sells, exchanges, purchases, rents or leases real estate.

(b) Offers to sell, exchange, purchase, rent or lease real es­tate.

(c) Negotiates, offers, attempts or agrees to negotiate the sale, exchange, purchase, rental or leasing of real estate.

(d) Lists, offers, attempts or agrees to list real estate for sale, lease or exchange.

(e) Buys, sells, offers to buy or sell or otherwise deals in options on real estate or improvements thereon.

(f) Collects, offers, attempts or agrees to collect rent for the use of real estate.

(g) Advertises or represents himself as being engaged in the business of buying, selling, exchanging, renting or leasing real estate.

(h) Assists or directs in procuring of prospects, intended to result in the sale, exchange, lease or rental of real estate.

(i) Assists or directs in the negotiation of any transaction intended to result in the sale, exchange, leasing or rental of real estate."  225 ILCS 455/4(4) (West 1994).

As set forth below, section 7 of the Act prohibits those who are unlicensed from recovering compensation:

"§7.  No action or suit shall be instituted, nor recovery therein be had, in any court of this State by any person, partnership, limited liability company, or corporation for compensation for any act done or service performed, the doing or performing of which is prohibited by this Act to other than licensed brokers or salesper­sons unless such person, partnership, limited liability company, or corporation was duly licensed hereunder as a broker or salesperson under Article 1 of this Act at the time that any such act was done or service performed which would give rise to a cause of action for compensa­tion."  225 ILCS 455/7 (West 1994).

Other jurisdictions with licensing statutes similar to  Illinois's have approached in three different ways the issue of whether the Act requires persons engaged in selling business entities to hold a real estate broker's license if real property is included in the business's assets.  First, numerous jurisdic­tions with statutes similar to ours hold that if a sale of the ongoing business involves any real estate component, no matter now 
de minimis
, the unlicensed broker is denied any commission.  See, 
e.g., Ford v. American Medical International, Inc.
, 228 Neb. 226, 422 N.W.2d 67 (1988); 
Thomas v. Jarvis
, 213 Kan. 671, 518 P.2d 532 (1974); 
Knight v. Johnson
, 741 S.W.2d 842 (Mo. Ct. App. 1987); 
Lockridge v. Hale
, 764 S.W.2d 84 (Ky. Ct. App. 1989); 
Bonasera v. Roffe
, 8 Ariz. App. 1, 442 P.2d 165 (1968).  The rationale for such a rule is that the transaction is viewed as a whole and could not have gone through but for the real estate component.  
Business Brokerage Centre v. Dixon
, 874 S.W.2d 1, 3 (Tenn. 1994).  Second, a minority view, known as the New Jersey rule, or the "pure severability" rule, holds that if the personalty is susceptible to a reasonable valuation, then the broker is entitled to a commission for that portion of the transaction which consti­tutes personalty.  
Kazmer-Standish Consultants, Inc. v. Schoeffel Instruments Corp
., 89 N.J. 286, 445 A.2d 1149 (1982).  The rationale for this approach is that it is unfair to allow a buyer or seller to use the broker's services and then refuse to pay the broker's rightful­ly earned commission.  
Business Brokerage Centre
, 874 S.W.2d at 4.  Third, other courts hold that a business broker is not precluded from recovering a commission if the real estate component is "merely incidental" to the sale of the entire business.  See, 
e.g., Weingast v. Rialto Pastry Shop
, 243 N.Y. 113, 152 N.E. 693 (1926); 
Frier v. Terry
, 230 Ark. 302, 323 S.W.2d 415 (1959); 
Cary v. Borden Co
., 153 Colo. 344, 386 P.2d 585 (1963); 
Quick Shops of Mississippi, Inc. v. Bruce
, 232 So. 2d 351 (Miss. 1970).  Courts applying this approach cite the legisla­tive purpose that real estate broker statutes are intended to protect unsophis­ticated home buyers, not those who are knowl­edgeable and well versed in buying and selling entire businesses.  The "merely incidental" approach focuses on the transaction as a whole but emphasizes the ultimate purpose of the transaction, the sale of an entire business.  
Business Brokerage Centre
, 874 S.W.2d at 4.

While we have not addressed this particular issue, our colleagues in other districts have addressed similar issues.  The parties agree that the Illinois case which is most closely on point is 
People ex rel. Fahner v. Community Hospital of Evanston
, 108 Ill. App. 3d 1051, 440 N.E.2d 200 (1982), but the parties do not agree on an interpretation of 
Fahner
.  In 
Fahner
, our colleagues on the First District Appellate Court addressed, among other things, the issue of whether a finder's fee of 5% was recoverable in connection with the sale of Community Hospital.  The hospital contended that the finder's fee was barred by section 7 of the Real Estate Brokers and Salesmen License Act (Ill. Rev. Stat. 1979, ch. 111, par. 5714), the predecessor to the Act here in question.  The finder in that case, an unlicensed broker, contended "that the court could properly award the fee because licensure was unnecessary as the transaction involved a `hospital' and only incidentally included real estate."  
Fahner
, 108 Ill. App. 3d at 1062, 440 N.E.2d at 208.  The finder argued vigorously that the sale was not a sale of real estate because the essence of the transaction was the sale of the hospital, most particularly the sale of the license to operate the hospital.  The 
Fahner
 court, however, rejected this argument, finding that the hospital's license was not an asset available for sale and that there was no condition precedent set forth in the contract that the buyer be able to obtain a license in order for the deal to close.  108 Ill. App. 3d at 1063, 440 N.E.2d at 209.  The 
Fahner
 court found that the sale of the hospital, which was no longer operating, was not the sale of the hospital entity but was the sale of real and personal property.  108 Ill. App. 3d at 1063-64, 440 N.E.2d at 209.   In 
Scott/Hubbard Co. v. Sika Chemical Corp
., 708 F. Supp. 945 (N.D. Ill. 1989), a choice-of-law case, the United States District Court for the Northern District of Illinois interpreted 
Fahner
 and found that while 
Fahner
 was inconclusive as to which of the three previously outlined rules would apply in Illinois, the indication from 
Fahner
 was that its reasoning supports the view that recovery will be allowed by an unlicensed finder when real estate is only incidental to the entire transac­tion.  
Scott/Hubbard Co.
, 708 F. Supp. at 947.  While we are not obliged to follow either the United States District Court or our colleagues in the First District, we agree that the better approach is to allow an unlicensed broker to collect his fee only when the real estate is incidental to the transaction.  Plaintiffs seem to concede this point but, nevertheless, contend that the sale of the landfill was not a transaction in which the real property was predominant, noting specifically the environmental permits necessary to run a landfill and the equipment and other personal property used at the landfill.  We are unconvinced.  

The term "landfill" itself connotes acres of real estate necessary for the disposal of waste.  In this instance the sale encompasses 180 acres.  Under the facts presented here, we cannot agree that the real estate was incidental to the transaction.  To the contrary, the 180 acres was of principal importance to the transaction.  Moreover, under the facts presented, we cannot agree with plaintiffs that this was a factual question for a jury determination, rendering inappropriate a dismissal pursuant to section 2-619(a)(9) of the Code, as the Act itself describes "real estate" as "land."  Section 4(18) of the Act defines "real estate" as follows:

"(18) `Real Estate' means and includes leaseholds, as well as any other interest or estate in 
land
, whether corporeal, incorporeal, freehold or non-freehold, and whether the real estate is situated in this State or elsewhere."  (Empha­sis added.)  225 ILCS 455/4(18) (West 1994).

We agree with defendants that without 
land
, there can be no 
land
fill.

As previous­ly set forth, plain­tiffs contend that they are "business brokers" and claim that the sale here was the sale of an ongoing business.  However, our General Assembly, through the Illinois Business Brokers Act of 1995 (Business Brokers Act), has made it quite clear that calling oneself a "business broker" in no way entitles one to circumvent licensing require­ments.  815 ILCS 307/10-1 
et seq.
 (West 1996).  Section 10-5.15 of the Business Brokers Act specifically provides:

"§10-5.15.  Business.  `Business' means an existing business, goodwill of an existing business, or any interest therein, or any one or combination thereof, where the transaction is not a securities transaction involving securities subject to the Illinois Securities Law of 1953, and wherein the sale or exchange of real estate is not the dominant element of the transaction."  815 ILCS 307/10-5.15 (West 1996).

While the Business Brokers Act was not in effect at the time the alleged oral contract was made in the instant case, it, nevertheless, demon­strates legisla­tive intent that the Real Estate License Act of 1983 applies to the sale of the business, unless real estate is merely inciden­tal to the sale.  

Furthermore, the Business Brokers Act requires a contract to be in writing in order to be enforceable.  815 ILCS 307/10-35 (West 1996).  We find it noteworthy that the contract here was oral.  Likewise, we find it noteworthy that the Business Brokers Act requires business brokers to register with the Office of the Secretary of State (815 ILCS 307/10-10 (West 1996)), but there were no allegations that plaintiffs were so registered.  Moreover, the law is quite clear in Illinois that a finder involved in the sale of real estate must satisfy the licensing requirements of the Act.  225 ILCS 455/1 
et seq.
 (West 1994); see also 
Rabin v. Prenzler
, 116 Ill. App. 3d 523, 530, 451 N.E.2d 1331, 1337 (1983); 
Kilbane v. Collins
, 56 Ill. App. 3d 707, 712, 372 N.E.2d 415, 419 (1978); 
Kilbane v. Dyas
, 33 Ill. App. 3d 439, 337 N.E.2d 217 (1975).  Therefore, it is clear from not only the Real Estate License Act of 1983 but also the Business Brokers Act that our General Assembly is attempt­ing to protect buyers, and, in our estimation, not just unsophis­ti­cated home buyers.  Consequent­ly, we believe that the trial court's determination on this issue was correct.

For the foregoing reasons, the judgment of the circuit court of Wayne County is affirmed.

Affirmed.

KUEHN, P.J., and WELCH, J. concur.