**GDC ENVIRONMENTAL SERVICES, INC., Appellant,**

v.

**RANSBOTTOM LANDFILL, Ransbottom Excavating, Inc., Ransbottom Roll–Off Services, Inc., Dan Ransbottom and David Ransbottom, Appellees.**

No. 43A04–0004–CV–157.

Court of Appeals of Indiana.

Dec. 29, 2000.

Robert G. Barker, J. Chris Reininga, Barker & Reininga, Indianapolis, Indiana, Attorneys for Appellant.

Stephen E. Arthur, Harrison & Moberly, Indianapolis, Indiana, Attorney for Appellees.

## OPINION

NAJAM, Judge

### STATEMENT OF THE CASE

In this appeal, we are asked to determine the applicability of the Real Estate Broker and Salesperson Licensing Act, Indiana Code Section 25–34.1 *et seq.*, (the "Licensing Act") to the sale of business assets that include an interest in real estate. GDC Environmental Services, Inc. ("GDC") brings an interlocutory appeal from the trial court's entry of summary judgment in favor of Ransbottom Landfill, Ransbottom Excavating, Inc., Ransbottom Roll Off Services, Inc., Dan Ransbottom and David Ransbottom (collectively the "Ransbottoms"). In addition, GDC appeals the trial court's denial of GDC's motion for partial summary judgment on Count I of its counterclaim for breach of express contract. Finally, GDC appeals the trial court's grant of the Ransbottoms' motion for sanctions pursuant to Indiana Trial Rule 56(G).

We affirm.

### ISSUES

GDC presents several issues for review which we consolidate and restate as:

1. Whether the trial court erred when it entered judgment as a matter of law in favor of the Ransbottoms.

2. Whether the trial court abused its discretion when it granted the Ransbottoms' motion for sanctions.

### FACTS AND PROCEDURAL HISTORY

GDC is an Indiana corporation that provides consulting services to landfills, waste hauling companies and other solid waste-related companies regulated by state and federal environmental agencies. Chris Oppy is the president and sole shareholder of GDC. In 1994, Dan and David Ransbottom owned and operated an 180–acre

landfill, Ransbottom Landfill,[1] and a waste hauling business, Ransbottom Roll Off Services, Inc., both located in Kosciusko County.

On August 31, 1994, the Ransbottoms and GDC entered into a Landfill Fee Agreement (the "Agreement"). The Agreement provided that "[i]n consideration of the promise of GDC to use its efforts to sell the Ransbottom Landfill and/or all or substantially all stocks or assets associated with the Landfill ("Assets") [the Ransbottoms] hereby [grant] to GDC the sole and exclusive right to offer for sale the Assets." Record at 25. The Agreement provided a commission to GDC in the amount of five percent of the sale price of the Ransbottoms' Assets up to $5 million, and twenty-five percent of the sale price beyond $5 million.

The original term of the Agreement was August 31, 1994 through August 31, 1995. The term was twice extended in writing to continue until June 1, 1996. Paragraph 6 of the Agreement further provided that "[i]f a sale is consummated after the termination of this Agreement to a party or on behalf of a party to whom Asset information was represented by GDC, then GDC will nevertheless be entitled to its full commission under this Agreement." Record at 26.

After the parties executed the Agreement, Oppy, as GDC's president, began searching for buyers for the Ransbottoms' Assets. On or about March 1995, Oppy provided Jeffrey Kendall, a shareholder of a company known as National Waste Industries Inc. ("NWI"), with a market study, detailed maps, environmental approval letters, a landfill permit, and other business information so that Kendall could evaluate the Ransbottoms' Assets. Although negotiations with Kendall ensued, NWI did not purchase the Ransbottoms' Assets.

In the Summer of 1997, after the written term of the Agreement had expired, the Ransbottoms began negotiations with a representative of Liberty Waste Services, Inc. ("Liberty Waste") for the sale of the Ransbottoms' Assets. Several of the individuals who owned interests in NWI, including Kendall, also owned interests in Liberty Waste. GDC was not involved in these negotiations. At the commencement of the negotiations, the Ransbottoms notified GDC that they did not anticipate paying GDC a commission for any sale of the Ransbottoms' Assets to Liberty Waste.

On August 27, 1997, the Ransbottoms filed a complaint for declaratory judgment seeking a declaration that the Agreement was unenforceable by GDC and void as applied to any eventual sale of the Ransbottoms' Assets to Liberty Waste. On February 20, 1998, while the complaint was pending, Packerton Land, a wholly owned subsidiary of Liberty Waste, purchased the Ransbottoms' Assets for $5.5 million. Thereafter, GDC filed counterclaims against the Ransbottoms alleging breach of express contract and breach of implied contract.

The Ransbottoms subsequently moved for summary judgment. GDC responded and filed a cross-motion for partial summary judgment on its breach of express contract counterclaim. The Ransbottoms filed their reply along with a motion for sanctions and order of contempt. On April 26, 1999, the State of Indiana, by the Indiana Real Estate Commission and the Attorney General of Indiana, filed a motion to intervene in the action. On March 1, 2000, the trial court entered its summary judgment order in favor of the Ransbottoms. In relevant part, the trial court stated as follows in support of its entry of summary judgment:

> Under I.C. 25–34.1–6–2, in order to prevail on a claim for commission for the sale of property that includes real estate, the claimant must prove that he

---

1. Ransbottom Landfill includes real estate and improvements belonging to another company owned by Dan Ransbottom, Ransbottom Excavating, Inc.

was a licensed real estate salesperson or broker. Any contract made in violation of this statute is void. (citation omitted). The admissible designated evidence establishes that the Agreement in this case is representative of a broker-type contract. The designated evidence also shows that GDC engaged in the activities of a broker without holding an Indiana Real Estate Broker or Salesman license. After disregarding those portions of the Affidavit of Chris Oppy, President of GDC, which contradict his earlier deposition testimony, both of which were submitted as designated evidence, the Court determined that no genuine issues of material fact exist and Plaintiffs are entitled to judgment as a matter of law. Accordingly, Ransbottoms' Motion for Summary Judgment is hereby GRANTED.

\* \* \* \* \*

IT IS THEREFORE ORDERED, ADJUDGED and DECREED that Summary Judgment is entered in favor of Plaintiffs, Ransbottoms, and against Defendant, GDC as follows:

GDC is not entitled to receive a commission pursuant to the Agreement entered into between the parties because, during all relevant periods, neither GDC nor its President, Chris Oppy, had an Indiana Real Estate Broker or Salesman License.

Record at 1347–49. The trial court also granted the Ransbottoms' motion for sanctions against GDC as well as the State's motion to intervene. The trial court denied GDC's motion for partial summary judgment. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: The Ransbottoms' Motion for Summary Judgment

We first address GDC's contention that the trial court erred when it granted the Ransbottoms' motion for summary judgment. In determining the propriety of summary judgment, we apply the same standard as the trial court. *Jesse v. American Cmty. Mut. Ins. Co.*, 725 N.E.2d 420, 423 (Ind.Ct.App.2000), *trans. denied.* We construe all facts and reasonable inferences to be drawn from those facts in favor of the non-moving party. *Id.* Summary judgment is appropriate when the designated evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). The purpose of summary judgment is to terminate litigation about which there can be no material factual dispute and which can be resolved as a matter of law. *Zawistoski v. Gene B. Glick Co., Inc.*, 727 N.E.2d 790, 792 (Ind.Ct.App.2000).

We note that the trial court made findings and conclusions in support of its entry of summary judgment. Although we are not bound by the trial court's findings and conclusions, they aid our review by providing reasons for the trial court's decision. *See Ledbetter v. Ball Mem'l Hosp.*, 724 N.E.2d 1113, 1116 (Ind.Ct.App.2000), *trans. denied.* If the trial court's entry of summary judgment can be sustained on any theory or basis in the record, we must affirm. *Id.*

The Ransbottoms moved for summary judgment arguing, as a matter of law, that GDC was not entitled to receive a commission on the sale of the Ransbottoms' Assets because, during all relevant time periods, neither GDC nor its president, Oppy, had a real estate broker or salesperson license in violation of the Licensing Act. The trial court agreed and entered summary judgment in the Ransbottoms' favor. The core issue is whether one who performs or offers to perform the acts of a salesperson or broker who does not have a license to sell real estate may recover any commission from the sale of business assets which include an interest in real estate. We answer that question in the negative.

Indiana Code Section 25–34.1–3–2 provides that "no person shall, for consider-

ation, sell, buy, trade, exchange, option, lease, rent, manage, list, or appraise real estate or negotiate or offer to perform any of those acts in Indiana or with respect to real estate situated in Indiana, without a license." The article defines "salesperson" as "an individual, other than a broker, who, for consideration and in association with and under the auspices of a broker, sells, buys, trades, exchanges, options, leases, rents, manages, or lists real estate or negotiates or offers to perform any of those acts." IND.CODE § 25–34.1–1–2. "Broker" is similarly defined as "a person who, for consideration, sells, buys, trades, exchanges, options, leases, rents, manages, lists, or appraises real estate or negotiates or offers to perform any of those acts." *Id.* A person who performs the acts of a salesperson or a broker without a license commits a Class A infraction. IND.CODE § 25–34.1–6–2(a). Moreover, in order to prevail on a claim for a commission, for performing the acts of a salesperson or broker, the claimant must allege and prove that, "at the time the cause of action arose, the party seeking relief was not in violation of this section." IND.CODE § 25–34.1–6–2(b).

There are several ways to approach the applicability of the Licensing Act to persons or entities engaged in the sale of business assets that include an interest in real estate. Indiana's Licensing Act, unlike that of some states, does not expressly include the sale of a business within the statutory definition of broker activities that must be licensed. *See Kazmer–Standish Consultants, Inc. v. Schoeffel Instruments Corp.*, 89 N.J. 286, 445 A.2d 1149, 1151 n. 1 (1982) (noting the statutes of thirteen jurisdictions). Nevertheless, several jurisdictions with licensing statutes similar to ours follow what appears to be the majority rule that if a sale of a business involves any real estate component, no matter how de minimus, the unlicensed broker is denied recovery of any commis-

sion. *See Thomas v. Daubs*, 291 Ill.App.3d 682, 226 Ill.Dec. 15, 684 N.E.2d 1011, 1014 (1997) (citations omitted) (noting, for example, that Nebraska, Kansas, Missouri, Kentucky, and Arizona follow this rule).[2] The rationale for this rule is that the transaction is viewed as a whole and the sale would not have occurred but for the real estate. *Id.* Other jurisdictions hold that an unlicensed broker is not precluded from recovering a commission if the real estate component is "merely incidental" to the sale of the entire business. *Id.* (noting, for example, that New York, Arkansas, and Mississippi follow this rule and holding that Illinois would also follow this rule). This approach is often rationalized based upon the legislative intent of licensing statutes to protect unsophisticated home buyers, not those who are knowledgeable and well versed in buying and selling entire businesses. *Id.* Finally, New Jersey follows what is clearly a minority rule which provides that an unlicensed broker may recover a commission on the portion of the sale of an ongoing business attributable to personal property, even if the sale includes an interest in real estate. *Kazmer–Standish Consultants*, 445 A.2d at 1153. The rationale underlying this approach is that it is unfair to allow a buyer or seller to use the services of a broker and then refuse to pay a rightfully earned commission. *Thomas*, 226 Ill.Dec. 15, 684 N.E.2d at 1014.

On at least three occasions this court has concluded or noted that an unlicensed broker is not entitled to recover any commission on the sale of business assets that include an interest in real estate. *See First Federal Sav. Bank of Indiana v. Galvin*, 616 N.E.2d 1048, 1052 (Ind.Ct. App.1993), *trans. denied; Abex Corp. v. Vehling*, 443 N.E.2d 1248, 1253 (Ind.Ct. App.1983); *Folsom v. Callen*, 126 Ind.App. 201, 205, 131 N.E.2d 328, 330 (1956). First, in *Folsom*, the plaintiff sought a

---

2. We note that some jurisdictions that follow the majority rule are those with statutes that expressly include the sale of a business within the statutory definition of broker activities that must be licensed. *See Kazmer–Standish*, 445 A.2d at 1151 n. 1.

commission based upon a lump sum sale of a hotel business, including its furniture, fixtures, goodwill and a nineteen-year leasehold. This court concluded that because the transaction was "calculated to result in the leasing or renting by the purchasers of the real estate upon which the hotel building and the furniture, fixtures, and equipment was situate[d]," the plaintiff fit within the statutory definition of a real estate broker. *Folsom,* 126 Ind. App. at 205, 131 N.E.2d at 330. Accordingly, we held that the plaintiff was not entitled to any commission on the sale because he was not a licensed real estate broker as required by statute. *Id.*

Later, in *Abex,* an unlicensed broker intervened in a lawsuit between a business seller and the buyer for breach of a sale agreement. The broker sought recovery from the seller for an agreed upon commission on the sale of business assets including machinery, equipment, tools, office furniture, inventories and the realty in which those items were located. *Abex Corp.,* 443 N.E.2d at 1250. The trial court entered summary judgment in favor of the broker. On appeal, the seller contended that because the parties' brokerage agreement included a real estate component, the entire agreement was unenforceable. We disagreed, concluding that *Folsom* did not control because the brokerage agreement between the unlicensed broker and the seller specifically limited the broker's activities and commission to the sale of personal property. *Id.* at 1253. Nevertheless, we approved of the rule set out in *Folsom* noting that a broker clearly engaged in procuring a sale or lease of real estate is appropriately denied any commission on the sale. *See id .*

Most recently, in *Galvin,* we considered the Licensing Act and its repercussions on a seller's agreement to pay a commission for the sale of a strip mall. Although there remained a question of fact as to whether the plaintiff performed the acts of a salesperson or broker as defined by statute, we noted that if the plaintiff's activi-ties concerning the sale "included any of the acts described in Indiana Code Section 25–34.[1]–3–2 he is not entitled to recover a commission because he is not licensed." *First Federal,* 616 N.E.2d at 1052.

Based upon the clear language of our Licensing Act as well as the cases applying that language, we conclude that Indiana follows the majority rule that a salesperson or broker who does not have a license to sell real estate is not entitled to any commission from the sale of business assets which include an interest in real estate, no matter how de minimus. It follows that a contract made in violation of the Licensing Act is void and unenforceable. *See id.* (citing *Hoffman v. Dunn,* 496 N.E.2d 818, 822 (Ind.Ct.App.1986)).

Here, the Agreement granted GDC "the exclusive right to offer for sale" the Ransbottoms' Assets. Record at 25. Indeed, the Agreement was made in consideration for GDC's promise to "use its efforts to sell" the Ransbottoms' Assets. Record at 25. Nevertheless, GDC contends that a genuine issue of fact exists as to whether the Agreement required GDC to operate as a broker in violation of the Licensing Act and, therefore, is void, or whether the Agreement merely contemplated that GDC would perform the services of a "finder." Brief of Appellant at 31–33. As noted by GDC, a finder merely introduces an interested buyer to the owner of property being sold. *See First Federal,* 616 N.E.2d at 1053. This court has stressed that, in order to avoid the requirements of the Licensing Act, a person may *do no more* than act as a finder. *Id.* (emphasis added). "Once a person crosses the line and takes part in negotiating a transaction, the person is acting as a broker and must be licensed in order to receive a commission." *Id.*

Generally, construction of a written contract is a question of law for the trial court for which summary judgment is particularly appropriate. *Mid State Bank v. 84 Lumber Co.,* 629 N.E.2d 909, 914

(Ind.Ct.App.1994). Whenever summary judgment is granted based upon the construction of a written contract, the trial court has either determined as a matter of law that the contract is not ambiguous or uncertain, or that the contract ambiguity, if one exists, can be resolved without the aid of a factual determination. *Id.* In the present case, we agree with the trial court that the language of the Agreement is unambiguous and clearly contemplated broker services. As we have noted, acts prohibited without a license include selling or offering to sell real estate. *See* IND. CODE § 25–34.1–3–2. GDC specifically contracted for the exclusive right to offer for sale, and promised to use its efforts to sell, the Ransbottoms' Assets, which included an interest in real estate.[3] It is undisputed that the Agreement was "calculated to result" in the sale of the real estate included in the Ransbottoms' Assets. *See Folsom,* 126 Ind.App. at 205, 131 N.E.2d at 330. Contrary to GDC's argument, we need not look to GDC's or Oppy's actual behavior to determine if GDC violated the Licensing Act, as the Agreement under which GDC seeks a commission was made in violation of the Act and is void and unenforceable.[4] Accordingly, GDC is not entitled to recover any commission pursuant to the Agreement on the sale of the Ransbottoms' Assets.

Because we hold that the Agreement is void, we need not address the other arguments made by GDC in opposition to summary judgment. Moreover, the trial court properly denied GDC's motion for partial summary judgment on its breach of express contract counterclaim. The Agreement is void and cannot be relied upon to support a breach of express contract claim. Judgment as a matter of law in favor of the Ransbottoms is appropriate.

### Issue Two: Motion for Sanctions

In response to the Ransbottoms' motion for summary judgment, GDC filed the affidavit of its president, Oppy, in which Oppy stated "I never participated in negotiations for the sale of the Ransbottoms' Assets." Record at 1247. GDC sought to create a genuine issue of material fact as to whether GDC operated as a broker or merely a finder. The Ransbottoms then filed a motion for sanctions and order of contempt pursuant to Indiana Trial Rule 56(G). Specifically, the Ransbottoms argued that Oppy's affidavit statement directly contradicted prior sworn deposition testimony and, thus, the affidavit was filed in bad faith. The Ransbottoms directed the trial court to, *inter alia,* deposition testimony in which Oppy admitted that he acted as a "broker" for the Ransbottoms. Record at 1056. The trial court agreed with the Ransbottoms that Oppy's affidavit was presented in bad faith. Accordingly, the trial court disregarded those portions of Oppy's affidavit which contradicted his earlier testimony and further granted the Ransbottoms' motion for sanctions.[5]

Trial Rule 56(G) provides:

---

3. GDC maintains that, at the very least, it is entitled to a commission on the non-real estate portion of the Ransbottoms' Assets because the realty was merely incidental to the transaction. Even were we to accept GDC's argument that the Agreement is divisible between the real estate and personal property, which we do not, we cannot say that the real estate involved here was merely incidental to the sale of the Ransbottoms' Assets, one of which was an 180 acre landfill. Indeed, "[t]he term 'landfill' itself connotes acres of real estate necessary for the disposal of waste." *Thomas,* 226 Ill.Dec. 15, 684 N.E.2d at 1015.

4. GDC erroneously relies on our opinion in *Galvin* to support its argument that the question of whether GDC acted as a broker or merely a finder is a question of fact. However, in *Galvin,* the parties had no written agreement outlining the duties of the plaintiff and, thus, in light of conflicting evidence on the issue, we concluded it was for the trier of fact to determine if the plaintiff acted as a broker or merely a finder in the sale transaction. Here, we are presented with an unambiguous brokerage contract made in violation of the Licensing Act.

5. The trial court scheduled a hearing on the issue of damages for April 7, 2000.

Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party reasonable expenses which the filing of the affidavits caused him to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.

This rule should be strictly enforced to preserve the intent and purpose of the summary judgment proceeding. *Donat v. Indiana Bus. and Inv. Trust,* 147 Ind.App. 276, 278–79, 259 N.E.2d 428, 429 (1970). As noted by the trial court in the instant case "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Gaboury v. Ireland Rd. Grace Brethren, Inc.,* 446 N.E.2d 1310, 1314 (Ind.1983).

Oppy's affidavit clearly contradicts a sworn statement in his earlier deposition. Thus, it appeared to the satisfaction of the trial court that Oppy's affidavit was presented in bad faith. We see no reason to second-guess that determination. We cannot say that the trial court abused its discretion when it granted the Ransbottoms' motion for sanctions.

Affirmed.

SULLIVAN, J., and BROOK, J., concur.