**FOR PUBLICATION**



ATTORNEY FOR APPELLANTS:

**WILLIAM H. TOBIN**
South Holland, Illinois

ATTORNEYS FOR APPELLEE:

**ALYSSA STAMATAKOS**
**BRIAN R. DEHEM**
Eichhorn & Eichhorn, LLP
Hammond, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DONALD BUNGER and FLORA BUNGER, | ) | |
| | ) | |
| Appellants-Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1309-CT-360 |
| | ) | |
| JASON A. BROOKS, M.D., | ) | |
| | ) | |
| Appellee-Defendant below, | ) | |
| | ) | |

**APPEAL FROM THE LAKE SUPERIOR COURT**
The Honorable John M. Sedia, Judge
Cause No. 45D01-1201-CT-15

**June 23, 2014**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Donald and Flora Bunger appeal the trial court's entry of summary judgment in favor of Jason A. Brooks, M.D., on the Bungers' complaint alleging medical malpractice that resulted in the rapid loss of vision in Donald's left eye. The Bungers raise the following issues for our review:

1. Whether the trial court abused its discretion when it struck their expert witness' affidavit.

2. Whether the trial court erred when it concluded that the Bungers had not established a genuine issue of material fact precluding summary judgment.

We reverse and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

In 2009, Donald was eighty-eight years old and suffered from age-related macular degeneration ("AMD") and cataracts in both eyes. The AMD in his right eye was severe, to the point that he was functionally blind in that eye. His visual acuity in the left eye was 20/60-2 (corrected) in July 2009, and the AMD was less severe and had been fairly stable in that eye for approximately five years.

On July 16, 2009, Dr. Brooks performed cataract surgery on Donald's left eye. During that surgery, Donald sustained a capsular tear in that eye. A capsular tear is a known complication of any cataract surgery, and it can occur in the absence of negligence. Dr. Brooks performed a procedure called a vitrectomy to repair the capsular tear. After Donald recovered from the surgery, the vision in his left eye "degenerated dramatically," and his visual acuity in that eye diminished to 20/400, leaving him functionally blind in both eyes. Appellant's App. at 92.

2

On June 8, 2010, the Bungers filed a proposed complaint for damages with the Indiana Department of Insurance alleging that Dr. Brooks had "failed to assess Donald's optical/medical condition properly or to properly assess the risks involved in undergoing a cataract/IOL insertion procedure"; "failed to perform a cataract/IOL insertion procedure properly"; and "failed adequately to discharge his duty to inform Donald in advance of the material risks of the cataract/IOL insertion procedure, including the risk of total or functional permanent blindness."[1] Id. at 28. In addition to Donald's injuries, the Bungers asserted a loss of consortium claim on Flora's behalf. The Bungers' claims were submitted to a medical review panel ("the Panel"), which issued a unanimous opinion and concluded as follows:

> The evidence does not support the conclusion that the defendant Jason A. Brooks, M.D., failed to meet the applicable standard of care as charged in the complaint regarding the surgery or treatment. However, there is a material issue of fact, not requiring expert opinion, bearing on liability for consideration by the court or jury, regarding the issue of informed consent.

Id. at 42.

On January 27, 2012, the Bungers filed their complaint with the trial court alleging Dr. Brooks' negligence in his treatment of Donald, including a claim based on lack of informed consent. On August 14, 2013, Dr. Brooks filed a motion for summary judgment alleging that the Bungers could not show that the alleged malpractice proximately caused Donald's blindness. The Bungers filed a memorandum in opposition to summary judgment and designated evidence, including portions of the deposition of their expert witness, Harry Knopf, M.D., and Dr. Knopf's affidavit. Dr. Knopf's

---

[1] The Bungers named a second defendant in their proposed complaint, but they did not name him as a defendant in their complaint filed with the trial court.

deposition testimony included statements that he would not have performed the surgery given the risks involved and that the surgery likely caused the rapid degeneration of Donald's eyesight. And in his affidavit, Dr. Knopf stated that the surgery caused the "sudden and severe loss of visual acuity" in Donald's left eye. Id. at 92. Dr. Brooks moved to strike Dr. Knopf's affidavit, and the trial court granted that motion. The trial court then granted summary judgment in favor of Dr. Brooks, without a hearing, and found and concluded as follows:

1. The plaintiff, Donald Bunger, alleges that the vision in his left eye degenerated as a result of cataract surgery performed by the defendant, Jason A. Brooks, M.D. Bunger further claims that Brooks should never have performed the surgery.

2. Brooks has filed a Motion for Summary Judgment which asserts that his expert, William I. Bond, M.D., F.A.C.S., opines that: ". . . Mr. Bunger's decreased visual acuity occurring after the surgery performed by Dr. Brooks was not in any way a result of the surgery or any care or lack of care rendered by Dr. Brooks . . . ," Bond Affidavit, page two, and that Bunger's own expert, Harry Knopf, M.D., testified in his deposition that the degeneration in Bunger's vision could have been caused by either or both the macular degeneration that was already present in Bunger's eye and the complications that took place in the surgery done by Brooks, but that he could not state that it was more likely than not the cataract surgery [that] caused the loss of vision. Based upon this testimony, Brooks asserts that there is no genuine issue of fact and that he is entitled to summary judgment as a matter of law.

3. Subsequent to the filing of the Motion for Summary Judgment, Bunger obtained and filed an affidavit of Knopf, in which he stated that: "In my opinion to a reasonable degree of medical certainty, the posterior capsular tear during the cataract surgery and the vitrectomy employed to correct the tear resulted in a sudden progression in the AMD and a sudden and severe loss of visual acuity in the left eye. . . ." Knopf Affidavit, page two. This sworn statement is, at best, inconsistent with and, at worst, directly contradicts, Knopf's own sworn deposition testimony.

4. Brooks requests that the Court strike Knopf's affidavit and grant summary judgment, or, in the alternative, continue the trial which is set to

4

begin Monday next to give Brooks an opportunity to depose Knopf regarding his sworn statement in his affidavit.

* * *

6. Here, Brooks has established a prima facie showing that there is no genuine issue of material fact: even when construing all facts and all factual inferences in Bunger's favor, Knopf's sworn deposition testimony that he could not state that it was more likely than not the cataract surgery caused the loss of vision, coupled with Bond's sworn statement that Bunger's decreased visual acuity occurring after the surgery performed by Brooks was not in any way a result of the surgery or any care or lack of care rendered by Brooks, is enough to meet this burden. Absent Knopf's subsequent affidavit, it is clear that Brooks is entitled to summary judgment as a matter of law. Bunger has not been denied his day in Court. In his claim for medical negligence, Bunger must prove by expert testimony not only that Brooks was negligent, but also that Brooks's negligence proximately caused Bunger's injury[.] [Citations omitted]. Any jury hearing this matter considering only the sworn testimony of Knopf in his deposition and Bond's testimony in his sworn affidavit, and not considering the sworn testimony in Knopf's subsequent affidavit, could not find in Bunger's favor on his claim.

7. What, then, of Knopf's subsequent affidavit? Bunger asserts that it creates a genuine issue of material fact. Brooks counters that Knopf's affidavit should be stricken and not considered by the Court.

8. It has long been the law in Indiana and many other jurisdictions that contradictory testimony contained in an affidavit may not be used to defeat a summary judgment motion where the only issue of fact raised by the affidavit is the credibility of the affiant[.] [Citations omitted]. In adopting this rule, the [Indiana Supreme Court in Gaboury v. Ireland Road Grace Brethren, Inc., 446 N.E.2d 1310 (Ind. 1983),] noted that "'[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.'" [And the Indiana Court of Appeals, in Crawfordsville Square, LLC v. Monroe Guaranty Insurance Company, 906 N.E.2d 934 (Ind. Ct. App. 2009),] went on to say that where deposition testimony and an affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that there was a plausible explanation for the discrepancy.

5

9.    Here, there is no plausible explanation for the discrepancy in Knopf's deposition testimony, which was that he could not conclude to any degree of certainty that Bunger's vision today would be better or worse had he not had the cataract surgery, and his sworn affidavit, which stated that there was a reasonable degree of certainty that the cataract surgery did cause his loss of vision.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court as follows:

1.    The Affidavit of Harry Knopf, MD, filed with the Court on August 28, 2013[,] is ordered stricken and is disregarded by the Court.

2.    The Motion for Summary Judgment filed by the defendant, Jason A. Brooks, M.D., is granted.

Id. at 8-10.  This appeal ensued.

**DISCUSSION AND DECISION**

**Issue One:  Motion to Strike Affidavit**

The Bungers first contend that the trial court abused its discretion when it struck Dr. Knopf's affidavit.  In his affidavit, Dr. Knopf stated in relevant part:  "In my opinion to a reasonable degree of medical certainty, the posterior capsular tear during the cataract surgery and the vitrectomy employed to correct the tear resulted in a sudden progression in the AMD and a sudden and severe loss of visual acuity in the left eye."  Id. at 92.  We review for an abuse of discretion a trial court's decision on a motion to strike.  Halterman v. Adams Cnty. Bd. of Comm'rs, 991 N.E.2d 987, 989 (Ind. Ct. App. 2013).  We will reverse only when the decision is clearly against the logic and effect of the facts and circumstances.  Id.

As we observed in Meisenhelder v. Zipp Express, Inc., 788 N.E.2d 924, 930 (Ind. Ct. App. 2003):

6

It is well settled that an opponent to summary judgment may not create a genuine issue of material fact simply by submitting an affidavit which directly contradicts prior, sworn deposition testimony. In re Estate of Meyer, 747 N.E.2d 1159, 1168-69 (Ind. Ct. App. 2001), trans. denied. See also Gaboury v. Ireland Road Grace Brethren, Inc., 446 N.E.2d 1310, 1314 (Ind. 1983) (contradictory testimony contained in an affidavit of the non-moving party may not be used to defeat a summary judgment motion where the only issue of fact raised by the affidavit is the credibility of the affiant). This rule should be strictly enforced to preserve the intent and purpose of summary judgment proceedings. GDC Envtl. Servs., Inc., v. Ransbottom Landfill, 740 N.E.2d 1254, 1261 (Ind. Ct. App. 2000). "'If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.'" Id. (quoting Gaboury, 446 N.E.2d at 1314).

Here, in his motion to strike, Dr. Brooks alleged that Dr. Knopf's deposition testimony and affidavit are directly contradictory in several respects. But the trial court only relied on one alleged contradiction between the deposition and affidavit in granting the motion to strike. In particular, Dr. Brooks averred that the following opinions cannot be reconciled: Dr. Knopf's affidavit states an opinion to a reasonable degree of medical certainty that the surgery caused a sudden and severe loss of visual acuity in his left eye, while at his deposition Dr. Knopf testified that "there's no way to know" what Donald's vision would have been in 2013 by the natural progression of his AMD had he not undergone the surgery. Appellants' App. at 80. The trial court agreed that those statements were contradictory and warranted striking the affidavit.

But our reading of Dr. Knopf's deposition testimony reveals that it was entirely consistent with his affidavit. First, much of the testimony during the 2013 deposition was related to the issue of whether the natural progression of the AMD, without surgery in 2009, might have resulted in his current blindness. But Dr. Knopf's affidavit is limited to

7

the issue of whether the surgery caused the "sudden progression in the AMD and a sudden and severe loss of visual acuity in the left eye." Id. at 92. In other words, Dr. Knopf testified regarding two separate topics. In his deposition, he testified to the likely natural progression of the AMD over the course of several years. And in his affidavit, he testified to the rapid progression of the AMD immediately following surgery.[2]

Second, Dr. Knopf, at his deposition, testified at length regarding the apparent connection between the surgery and the sudden loss of vision thereafter. His affidavit corroborated that testimony. While Dr. Knopf also testified at his deposition that it is possible that a natural progression of Donald's AMD caused his sudden blindness, Dr. Knopf consistently stated that he believed that the sudden blindness was likely caused by the complicated surgery.

Further, to the extent Dr. Brooks questioned the bases for Dr. Knopf's opinions on the issues discussed, that goes to the weight of the evidence, not its admissibility for purposes of defeating a summary judgment motion. As this court has observed,

> "[T]he admissibility of a[n] [expert]'s testimony should not be determined by examining the level of certainty in his opinions since the court would be invading the province of the jury. Rather, the expert's opinion is admissible if a proper foundation establishes the need for expert testimony and the expert's credentials establish an expertise in the area and the methods employed. Once these factors are established, the evidence is admissible and the jury is left to perform its function of assessing the reliability of the evidence."

---

[2] Dr. Brooks contends that the Bungers have waived any argument that "Dr. Knopf's inability to render an opinion regarding his likely vision 'today' is irrelevant and immaterial, since the cause of his blindness should be considered only 'post-surgery' as opposed to 'today.'" Appellee's Brief at 22. First, the Bungers made this same argument to the trial court in opposition to Dr. Brooks' motion to strike, so it is not waived. Second, the deposition testimony speaks for itself. There are clear delineations between the questions regarding the cause of the rapid deterioration in Donald's vision after the surgery and those regarding whether a natural progression of the AMD would have resulted in blindness several years after the surgery.

Miller v. Barnard, 957 N.E.2d 685, 701 (Ind. Ct. App. 2011) (quoting Yang v. Stafford, 515 N.E.2d 1157, 1162 (Ind. Ct. App. 1987), trans. denied.)  Here, expert testimony was required, Dr. Knopf's testimony and affidavit are not contradictory, and Dr. Brooks has not challenged Dr. Knopf's credentials.  Thus, we hold that the trial court abused its discretion when it struck Dr. Knopf's affidavit.

**Issue Two:  Summary Judgment**

The Bungers next contend that the trial court erred when it granted summary judgment in favor of Dr. Brooks.  Our standard of review for summary judgment appeals is well established:

> When reviewing a grant [or denial] of summary judgment, our standard of review is the same as that of the trial court.  Considering only those facts that the parties designated to the trial court, we must determine whether there is a "genuine issue as to any material fact" and whether "the moving party is entitled to a judgment as a matter of law."  In answering these questions, the reviewing court construes all factual inferences in the non-moving party's favor and resolves all doubts as to the existence of a material issue against the moving party.  The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law; and once the movant satisfies the burden, the burden then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact.

Dreaded, Inc. v. St. Paul Guardian Ins. Co., 904 N.E.2d 1267, 1269-70 (Ind. 2009) (citations omitted).  The party appealing a summary judgment decision has the burden of persuading this court that the grant or denial of summary judgment was erroneous.  Knoebel v. Clark Cnty. Superior Court No. 1, 901 N.E.2d 529, 531-32 (Ind. Ct. App. 2009).  Where the facts are undisputed and the issue presented is a pure question of law,

we review the matter de novo.  Crum v. City of Terre Haute ex rel. Dep't of Redev., 812 N.E.2d 164, 166 (Ind. Ct. App. 2004).

In a medical malpractice action based upon negligence, the plaintiff must establish:  1) a duty on the part of the defendant in relation to the plaintiff; 2) failure on the part of the defendant to conform to the requisite standard of care required by the relationship; and 3) an injury to the plaintiff proximately caused by that failure. Hamilton v. Ashton, 846 N.E.2d 309, 315 (Ind. Ct. App. 2006), trans. denied.

Again, the Panel in this case concluded that Dr. Brooks was not negligent "as charged in the complaint regarding the surgery or treatment," but that "there is a material issue of fact, not requiring expert opinion, bearing on liability for consideration by the court or jury, regarding the issue of informed consent."  Appellants' App. at 42.  Under the doctrine of informed consent, expert opinion is generally necessary to establish the causal connection between the inadequate disclosure and the resulting damages.  Bunch v. Tiwari, 711 N.E.2d 844, 850 (Ind. Ct. App. 1999).  Here, the sole issue challenged on summary judgment was proximate cause.  Dr. Brooks made no argument that summary judgment was warranted based on either the issue of duty or breach of duty.

> A party's act is the proximate cause of an injury if it is the natural and probable consequence of the act and should have been reasonably foreseen and anticipated in light of the circumstances.  Proximate cause requires, at a minimum, that the harm would not have occurred but for the defendant's conduct.  While proximate cause is generally a question of fact, it becomes a question of law where only a single conclusion can be drawn from the facts.  The defendant's act need not be the sole cause of the plaintiff's injuries.  Many causes may produce the injurious result; the essential question is whether the defendant's wrongful act is one of the proximate causes rather than a remote cause.

Hamilton, 846 N.E.2d at 315  (citations omitted).

10

In support of his summary judgment motion, Dr. Brooks designated expert testimony that Donald's "decreased visual acuity occurring after the surgery performed by Dr. Brooks was not in any way a result of the surgery or any care or lack of care rendered by Dr. Brooks." Appellants' App. at 49. Thus, the burden then shifted to the Bungers to designate and produce evidence of facts showing the existence of a genuine issue of material fact on the issue of proximate cause. The Bungers designated relevant portions of Dr. Knopf's deposition testimony and his affidavit. At his deposition, Dr. Knopf testified on the proximate cause issue as follows:

> Macular degeneration can continue to deteriorate, cause deterioration in vision over time and in an aged person as this person is eighty years old, so the presence of macular degeneration all by itself can cause a decrease in visual acuity even to the extent of where he is twenty over two hundred without having done anything more to that patient. Once you've done cataract surgery, however, and you increase the inflammation in the anterior chamber and you do a vitrectomy and you increase inflammation in the vitreous, it is logic [sic] that macular degeneration can be more aggravated at a faster rate than you would expect from somebody who's doing it by nature.

> * * *

> . . . [And] patients who have macular degeneration who have uncomplicated cataract surgery there is no evidence that it increases the effect of macular degeneration in that patient; but in complicated cataract surgery it does increase that rate.

> * * *

> . . . [I]n Mr. Bunger's case because he had a vitrectomy the chances are that that is the most aggravating cause to make the macular degeneration proceed faster than it would.

> * * *

> . . . [I]f the natural progression of visual acuity is X and this came on within one week of his cataract surgery and if he was progressing from X to

> Y over a year, from twenty over seventy to twenty over two hundred in one year[] without any surgery and he progressed from twenty over seventy to twenty over two hundred in seven days after surgery it makes logic [sic] sense to me that that was something to do with the surgery.

Appellants' App. at 72-77. Thus, while Dr. Knopf testified that there were two possible causes of Donald's rapid vision loss post-surgery, namely, the natural progression of the AMD and the complicated cataract surgery, he testified that the likely cause was the surgery. And Dr. Knopf corroborated that opinion with his affidavit, stating that, "to a reasonable degree of medical certainty, the posterior capsular tear during the cataract surgery and the vitrectomy employed to correct the tear resulted in a sudden progression in the AMD and a sudden and severe loss of visual acuity in the left eye." Id. at 92.

But Dr. Brooks contends that "Dr. Knopf's deposition and affidavit opinions are both insufficient to overcome summary judgment and inadmissible pursuant to Ind. Evid. Rule 702." Appellee's Brief at 33-34. In particular, Dr. Brooks maintains that Dr. Knopf "admits that he does not have knowledge of the facts that would support his opinions. While his affidavit asserts that Bunger suffered from progression in his macular degeneration, Dr. Knopf testified at his deposition that he did not review the records necessary to make this determination." Id. at 34 (emphasis original). Dr. Brooks asserts that, for example, Dr. Knopf could not recall whether Donald's AMD had progressed after surgery, and he stated that he had not reviewed certain medical records, including fluorescein angiogram images.

Indiana Evidence Rule 702 provides:

(a) A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if

12

the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

(b) Expert scientific testimony is admissible only if the court is satisfied that the expert testimony rests upon reliable scientific principles.

In Clark v. Sporre, 777 N.E.2d 1166, 1170-71 (Ind. Ct. App. 2002), we explained that

[s]peculation will not pass for an expert opinion under Rule 702. See Howerton v. Red Ribbon, Inc., 715 N.E.2d 963, 966 (Ind. Ct. App. 1999) ("Knowledge admissible under the Rule must connote 'more than subjective belief or unsupported speculation.'") (quoting Hottinger v. Trugreen Corp., 665 N.E.2d 593, 596 (Ind. Ct. App. 1996)), trans. denied. To be admissible, an expert's opinion that an event caused a particular injury must be based on something more than coincidence. See Hannan v. Pest Control Servs., Inc., 734 N.E.2d 674, 682 (Ind. Ct. App. 2000), trans. denied. An expert's opinion on causation in a medical malpractice case must rest on "'an application of particular scientific facts to particular data about the instant case.'" Ind. Mich. Power Co. v. Runge, 717 N.E.2d 216, 237 (Ind. Ct. App. 1999) (emphasis removed) (quoting Porter v. Whitehall Labs., Inc., 791 F. Supp. 1335, 1345 (S.D. Ind. 1992)). An expert witness who "lacks detailed knowledge" of a plaintiff's "current medical condition and past medical history" has no basis to give an opinion on causation under Rule 702. See id. ("Unlike the [plaintiffs'] treating physicians, all of whom stated that they did not diagnose EMF as the cause of the [plaintiffs'] alleged injuries, Smith lacks both a medical degree and detailed knowledge of [the plaintiffs'] current medical conditions and past medical histories, which would form the critical factual basis for his expert opinions.")

(Emphasis added).

Here, we disagree with Dr. Brooks' characterization of Dr. Knopf's testimony regarding his knowledge of Donald's condition and his review of the relevant medical records. First, in his affidavit, Dr. Knopf stated that he had

reviewed the medical records pertaining to the treatment of Donald Bunger by Jason A. Brooks MD and others in 2009, including records of the Retina Center (Serge de Bustros MD), Munster Eye Care Associates PC and Munster Same Day Surgery Center (Jason A. Brooks MD), Williams Eye Institute (Douglas P. Williams MD), Community Eye Center and Retina

13

> Consultants of Southwest Florida. These records are of the type and quality
> I regularly use and rely on in treating patients.

Id. at 91. Second, during his deposition, which was apparently conducted two years after he had formed his opinion in this case, Dr. Knopf merely stated that he could not recall whether, when he had "reviewed the materials originally years ago," he had "conducted any analysis to determine that there was a progression of the macular degeneration post-cataract surgery in this case[.]" Id. at 110. And, while Dr. Brooks claims that Dr. Knopf "did not even review any fluorescein angiogram images" in forming his opinion, Dr. Knopf testified, "I did not [review those images], not recently, I don't know if it was provided two years ago, but I did not recently." Id. (first emphasis original, second emphasis added).

Thus, contrary to Dr. Brooks' contention, the evidence does not show that Dr. Knopf did not review certain relevant medical records but, rather, that he simply had not done so recently or could not recall conducting an analysis "in this case" when he had originally reviewed some of the records.[3] We hold that Dr. Brooks has not demonstrated that Dr. Knopf's opinion was inadmissible under Evidence Rule 702.

In sum, our review of Dr. Knopf's deposition testimony and affidavit reveals that he consistently opined that the complicated cataract surgery caused Donald's sudden

---

[3] Moreover, Dr. Knopf testified that if a patient has preexisting AMD and "ends up with a subsequent fluorescein angiogram that shows a membrane," that could "also be just from progression of the macular degeneration[.]" Appellants' App. at 71. In other words, a review of the fluorescein angiogram would not have been dispositive of Dr. Knopf's opinion on causation in this case.

blindness. That evidence is sufficient to create a genuine issue of material fact, and the trial court erred when it entered summary judgment in favor of Dr. Brooks.[4]

**Conclusion**

A careful reading demonstrates that there is no material discrepancy between Knopf's deposition testimony and affidavit and that his testimony is not speculative. Dr. Knopf's affidavit should not have been stricken under <u>Gaboury</u>, and his testimony was not inadmissible under Evidence Rule 702. Construing all factual inferences in the Bungers' favor and resolving all doubts as to the existence of a material issue against Dr. Brooks, we hold that a genuine issue of material fact exists whether the surgery proximately caused Donald's injuries. There is also a question whether and, if so, to what extent, Donald's pre-existing condition contributed to his injuries, but that question is for the fact finder. A pre-existing condition or susceptibility, if aggravated by a defendant's conduct, may result in a defendant's full liability for the resulting injury and loss. <u>Dunn</u>, 516 N.E.2d at 56. However, if the pre-existing condition, standing alone, independently causes injury and loss, a defendant will not be liable for such damages. <u>Id.</u>

Reversed and remanded for further proceedings.

RILEY, J., and MAY, J., concur.

---

[4] To the extent Dr. Brooks suggests that the Bungers were required to prove that the surgery exacerbated Donald's preexisting AMD by a certain percentage, he is incorrect. That question goes to damages, not liability. <u>See, e.g.</u>, <u>Dunn v. Cadiente</u>, 516 N.E.2d 52, 56 (Ind. 1987) (holding congenital anomaly did not relieve defendant from liability merely because the pre-existing physical condition made the plaintiff more susceptible to injury).